Ex parte, Lindsay.

*In the matter of proving the last will and testament of*
Mary Lindsay, *deceased.*

The testatrix commenced her will in this way—"According to my present intention, should anything happen me before I reach my friends in St. Louis, I wish to make a correct disposal of the three hundred dollars now in the hands of H., &c. Of this, I leave to A. L., &c. &c." After making the will, she proceeded safely to St. Louis, and subsequently returned to New York, where she died. *Held* that the validity of the instrument must be tested by the proof of its original execution, and by its contents, without the aid of parol evidence as to the intention of the testatrix in respect to its subsequent ratification.

Wills may be conditional, that is, dependent for their testamentary operation upon a specified contingency. The condition must appear upon the face of the will, and go to the root of the entire instrument, in order to affect the question of probate.

EX PARTE, LINDSAY.

If the conditions are of partial application, the will is admitted to proof, and the effect of the conditions upon particular legacies, becomes a matter of construction.

If the words do not clearly express that the entire instrument is to take effect or to fail upon a particular event, the court is justified in a sentence of probate on the formal proof, so as to leave the determination of its conditional character for subsequent consideration. Held that the words "according to my present intention," &c., in the introductory part of the present will, may have been designed to express the occasion of making the instrument, rather than a clear condition on which its validity was to depend, and the will was accordingly admitted to proof.

THE SURROGATE. The instrument offered for probate, bears date September 1, 1851. It is proved to have been duly executed as a will. The paper runs in this way:—
" According to my present intention, should anything happen me before I reach my friends in St. Louis, I wish to make a correct disposal of the three hundred dollars now in the hands of Mr. Harrison, bearing interest for me. Of this I leave to Mrs. Anne Lindsay, widow of my dear brother now deceased, one hundred and fifty dollars, for the benefit of herself and her children, share and share alike. The other hundred and fifty, I leave to the Associate Presbyterian Church, &c., for promoting the cause of Christ in said church."

It appears that the deceased proceeded safely to St. Louis, on the proposed journey mentioned in the will, and afterwards returned to New York, where she died in December last. Is the paper propounded for proof, an absolute or a conditional will, and must that point be determined on the probate ? At common law there might be conditional wills of personalty, that is, wills the validity or operation of which was, by the terms of the instrument itself, made to depend upon a specified contingency. The condition must be one which goes to the root of the entire will, and not merely to certain provisions, in order to have the question raised on the probate. If the conditions

are of partial application, the will is admitted to proof, and the effect of the conditions upon the particular legacies becomes a matter of construction. If the conditions are general, and relate to the entire will, the vitality of the whole instrument is involved, and the question becomes material on the probate.

There is another question necessary to be determined in this class of cases, and that is, whether the words clearly express a contingency upon which the instrument is to take effect, or whether they may fairly be interpreted as indicating the cause or occasion of making the will; whether, in the language of Sir John Nicholl, "it is an absolute condition, or dependent on any particular motive operating at the time." " Albeit," says Swinburne, "the testator make his testament by reason of some great journey, yet it is not revoked by the return of the testator." In *Burton* vs. *Collingwood*, 4 *Hagg.*, 176, the will began in this way : "March 5, 1814. Morning, near one. All men are mortal, and no one knows how soon his life may be required of him. Lest I should die before the next sun, I make this, my last will and testament, in thankfulness to God that I have anything left to devise." This will was preserved by the testator for eighteen years, and was admitted to probate, on his decease ; the court being of opinion that it was not contingent as to the disposition of the property. In *Forbes* vs. *Gordon*, 3 *Phill.*, 625, the court said, "The words, 'In case of my inability to make a regular codicil to my will, I desire the following to be taken as a codicil, &c.,' are not provisional or conditional terms, but mean no more than 'Till I make a regular will, so long I adhere to this paper.'" In *Bateman* vs. *Pennington*, 3 *Moore*, *P. C. C.*, 223, the instrument was written in ink, but dated and signed *in pencil*, with the addition, "*In case of accident, I sign this my will.*" The testator lived more than three months after. The will was admitted to probate. The terms, in the case of *Strauss* vs. *Schmidt*, 3 *Phill.*, 209., were, "In case I should die on my travels, &c." The testator returned home, and having

subsequently recognised the paper in question, it was allowed probate, on the idea that a conditional will may be converted into an absolute one, by a subsequent act of ratification or recognition. Said the judge, " Courts are cautious how they construe conditions of this sort. I have looked whether it is an absolute condition, or dependent on any particular motive operating at the time. It does not say it is to take place only in the event of his dying.— If, on the return of the deceased, by subsequent acts he has recognised those papers, I should not hold his return to be such a defeasance as to invalidate the will. If he had returned and taken no notice of the paper, his silence would have put a construction on it—if, on the other hand, his conduct shows that he was mindful of it, the court is bound to carry his intentions into effect." In *The Goods of Ward*, 4 *Hagg.*, 179, the paper propounded was an unattested letter containing this expression: "I mention these matters thus particularly, to serve as a memorandum for you, in case it should be the Lord's will to call me hence by any fatal event in the voyage or journey before us." This instrument was rejected, the testator having returned from his journey and made a subsequent attested will. In the case of *Todd's Will*, 2 *Watts & Serg.*, 145, the will began in this way, " My wish, desire and intention now is, that if I should not return (which I will, no preventing Providence), what I own shall be divided as follows." It was held that the will was conditional, and the party having returned, it ceased to have any effect. In *Parsons vs. Lanoe*, 1 *Vesey, Sen.*, 190, the condition was, "If I die before my return from my journey to Ireland." The decedent did not die before his return. Lord Hardwicke held that the will was entirely contingent upon the event specified, saying, " I am very clear without help of an authority, that a will or codicil may be entirely depending on a contingency, so as to have no effect as an instrument of a will, unless that event happened—nor should it be proved in the ecclesiastical court." In *Sinclair* vs. *Hone*, 6 *Vesey*, 608,

the contingency expressed in a codicil, was, "In case I die before I join my beloved wife," &c. The testator joined his wife before his death, and though the codicil had been admitted to probate in the ecclesiastical court, it was held by the Master of the Rolls, to be contingent, and to be defeated by the failure of the condition. He said, "There is nothing in the objection upon the probate of this codicil granted by the ecclesiastical court. I do not say there may not be a case in which it would be the duty of that Court to refuse probate, where the objection was so plain, that there could be no doubt, as in the case of *Parsons* vs. *Lanoe*, where it was clear that he had returned. In such a case the Ecclesiastical Court might refuse probate, the paper being clearly not intended to have effect in the event that happened. But where there is a doubt, to say they may refuse probate, merely because in one possible event the instrument may be left inoperative, cannot be maintained." (*See Morrell* vs. *Dickey*, 1 *Johns. C. R.*, 153.)

It will be observed that all these cases occurred before the adoption of the statute prescribing the mode of executing wills of personal estate, and when the court might judge from extrinsic evidence as to the intention of the testator. In the case now before me it appears in proof that the person with whom the decedent deposited the will offered on her return from St. Louis, to give it up to her, saying that "she supposed the paper was of no use, to which the decedent replied she wished it to stand as it was, and desired her to keep it, for if she had to do it again she would make a similar will." At the period when parol evidence of republication could be given and no formal act was required, this evidence of subsequent ratification or recognition would have been sufficient. But under our statute, republication now requires the same formalities as are requisite to the original execution of a will. The validity of this instrument must, therefore, be tested by the proof of its original execution, and by its contents, without the aid of extrinsic evidence as to the intention of the testatrix. If

the will be admitted to probate, it will still remain a matter of construction whether the bequests are made dependent upon a condition or contingency. If it be denied probate, that question cannot be brought before a Court of Construction. If, therefore, in a case of this kind there be room for reasonable doubt as to the contingent character of the instrument—if there are not clear and unquestionable terms of contingency, the Probate Judge is justified in a sentence of probate on the formal proof, so as to leave the determination of its conditional nature for subsequent construction and interpretation. In this instance, to say the least, there is room for reasonable doubt. The words " According to my present intention, should anything happen me before I reach my friends in St. Louis, I wish to make a correct disposal of the three hundred dollars in the hands of Mr. Harrison," may express rather the occasion of making the instrument, than a clear condition on which the disposition was to take effect. She does not say that she gives *only* in case anything should happen, but expresses a general desire to make " a correct disposal " of her property, naturally introducing the reason or motive operating. The term " should " in this connection, does not necessarily import condition or contingency as to the subject matter of the instrument, but may have been designed to express the idea that *lest* or *for fear* " anything should happen," &c., she proposed to make a will. It is used by way of introduction, and not in the clause of gift. The will is inartificially drawn; and where language is employed without exactness or precision, close and literal interpretation may very easily carry us wide of the intention. I am, therefore, of opinion that the will should be admitted to proof, and its construction be left for future consideration.