trade, every such combination, as well the small as the great, is within the act.

In view of my interpretation of the statute I do not go further into the question of the power of Congress. That has been dealt with by my brother White and I concur in the main with his views. I am happy to know that only a minority of my brethren adopt an interpretation of the law which in my opinion would make eternal the *bellum omnium contra omnes* and disintegrate society so far as it could into individual atoms. If that were its intent I should regard calling such a law a regulation-of commerce as a mere pretense. It would be an attempt to reconstruct society. I am not concerned with the wisdom of such an attempt, but I believe that Congress was not entrusted by the Constitution with the power to make it and I am deeply persuaded that it has not tried.

I am authorized to say that the CHIEF JUSTICE, MR. JUSTICE WHITE and MR. JUSTICE PECKHAM concur in this dissent.

————————

### EATON *v.* BROWN.

APPÉAL FROM AND ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 171.  Submitted March 3, 1904.—Decided March 14, 1904.

Courts do not incline to regard a will as conditional where it reasonably can be held that the testator was merely expressing his inducement to make it, although his language, if strictly construed, would express a condition.

THE facts are stated in the opinion of the court.

*Mr. J. Altheus Johnson* and *Mr. Joseph A. Burkart* for the appellant.

*Mr. Thomas Watts* for appellee:

It appears plainly that testatrix intended the disposition of her property to become effectual only in case of the happening of the contingency specified in the will. *Parsons* v. *Lanoe,* 1 Ves. Sr. 190; *S. C.,* Ambler, 557; *Sinclair* v. *Hone,* 6 Ves. Jr. 607; *Estate of Winn,* 2 Sw. & Tr. 47; *Roberts* v. *Roberts,* 8 Jur. N. S. 220; *Matter of Porter,* L. R. 2 P. & D. 22; *In re Robinson,* L. R. 2 P. & D. 171; *Lindsay* v. *Lindsay,* L. R. 2 P. & D. 449; *In re Ward,* 4 Hagg. 179; *In re Todd,* 2 W. & S. (Pa.) 145; *Morrow's Appeal,* 116 Pa. St. 440; *Wagner* v. *McDonald,* 2 Har. & J. 346; *Maxwell* v. *Maxwell,* 3 Met. (Ky.) 101; *Daugherty* v. *Daugherty,* 4 Met. (Ky.) 25; *Robnett* v. *Ashlock,* 49 Missouri, 171; *McGee* v. *McNeill,* 41 Mississippi, 17.

The language used by the respective testators in some of the cases cited is strikingly similar to that used by testatrix in the case at bar.

As to the rule for construction of wills, see *Keteltas* v. *Keteltas,* 72 N. Y. 312; 3 Jarman on Wills, 708, rule XIX.

MR. JUSTICE HOLMES delivered the opinion of the court.

The question in this case is whether the following instrument is entitled to probate:

"Washington, D. C. Aug. 31"/001.
"I am going on a Journey and may, not ever return. And if I do not, this is my last request. The Mortgage on the King House, wich is in the possession of Mr H H Brown to go to the Methodist Church at Bloomingburgh All the rest of my properday both real and personal to My adopted Son L. B. Eaton of the life Saving Service, Treasury Department Washington D. C, All I have is my one hard earnings and and I propose to leave it to whome I please.    Caroline Holley."

The case was heard on the petition, an answer denying the allegations of the same, except on a point here immaterial, and

setting up that the residence of the deceased was in New York, and upon a stipulation that the instrument was written and signed by the deceased on August 31, 1901, and that she went on her journey, returned to Washington, resumed her occupation there as a clerk in the Treasury Department, and died there on December 17, 1901. Probate was denied by the Supreme Court with costs against the appellant, and this decree was affirmed by the Court of Appeals upon the ground that the will was conditioned upon an event which did not come to pass. It will be noticed that the domicil of the testatrix in Washington was not admitted in terms. But the Court of Appeals assumed the allegation of the petition that she was domiciled in Washington to be true, and obviously it must have been understood not to be disputed. The argument for the appellee does not mention the point. The petition also sets up certain subsequent declarations of the deceased as amounting to a republication of the will after the alleged failure of condition, but as these are denied by the answer they do not come into consideration here.

It might be argued that logically the only question upon the probate was the *factum* of the instrument. *Pohlman* v. *Untzellman*, 2 Lee, Eccl. 319, 320. But the practice is well settled to deny probate if it clearly appears from the contents of the instrument, coupled with the admitted facts, that it is inoperative in the event which has happened. *Parsons* v. *Lanoe*, 1 Ves. Sr. 189; *S. C.*, Ambler, 557; 1 Wils. 243; *Sinclair* v. *Hone*, 6 Ves. 607, 610; *Roberts* v. *Roberts*, 2 Sw. & Tr. 337; *Lindsay* v. *Lindsay*, L. R. 2 P. & D. 459; *Todd's Will*, 2 W. & S. 145. The only question therefore is whether the instrument is void because of the return of the deceased from her contemplated journey. As to this, it cannot be disputed that grammatically and literally the words "if I do not" [return] are the condition of the whole "last request." There is no doubt either of the danger in going beyond the literal and grammatical meaning of the words. The English courts are especially and wisely careful not to substitute a lively imagination of what a testatrix

would have said if her attention had been directed to a particular point for what she has said in fact.   On the other hand, to a certain extent, not to be exactly defined, but depending on judgment and tact, the primary import of isolated words may be held to be modified and controlled by the dominant intention to be gathered from the instrument as a whole.   Bearing these opposing considerations in mind, the court is of the opinion that the will should be admitted to proof.

"Courts do not incline to regard a will as conditional where it can be reasonably held that the testator was merely expressing his inducement to make. it, however inaccurate his use of language might be, if strictly construed."   *Damon* v. *Damon*, 8 Allen, 192, 197.   Lord Penzance puts the same proposition perhaps even more strongly in *In the Goods of Porter*, L. R. 2 P. & D. 22, 23; and it is almost a common place.   In the case at bar we have an illiterate woman writing her own will.   Obviously the first sentence, "I am going on a journey. and may not ever return," expresses the fact which was on her mind as the occasion and inducement for writing it.   If that had been the only reference to the journey the sentence would have had no further meaning.   *Cody* v. *Conly*, 27 Gratt. 313. But with that thought before her, it was natural to an uneducated mind to express the general contingency of death in the concrete form in which just then it was presented to her imagination.   She was thinking of the possibility of death or she would not have made a will.   But that possibility at that moment. took the specific shape of not returning from her journey, and so she wrote "if I do not return," before giving her last commands.   We need not consider whether if the will had nothing to qualify these words, it would be impossible to get away from the condition.   But the two gifts are both of a kind that indicates an abiding and unconditioned intent— one to a church, the other to a person whom she called her adopted son.   The unlikelihood of such a condition being attached to such gifts may be considered.   *Skipwith* v. *Cabell*, 19 Gratt. 758, 783.   And then she goes on to say that all that

she has is her own hard earnings and that she proposes to leave it to whom she pleases. This last sentence of self-justification evidently is correlated to and imports an unqualified disposition of property, not a disposition having reference to a special state of facts by which alone it is justified and to which it is confined. If her failure to return from the journey had been the condition of her bounty, an hypothesis which is to the last degree improbable in the absence of explanation, it is not to be believed that when she came to explain her will she would not have explained it with reference to the extraordinary contingency upon which she made it depend instead of going on to give a reason which on the face of it has reference to an unconditioned gift.

It is to be noticed that in the leading case cited for the opposite conclusion from that which we reach, *Parsons* v. *Lanoe,* Lord Hardwicke emphasizes the proposition that under the circumstances of that case no Court of Equity would give any latitude to support such a will. There the will began "in case I should die before I return from the journey I intend, God willing, shortly to undertake for Ireland." The testator then was married but had no children. He afterwards returned from Ireland and had several children. If the will stood the children would be disinherited, and that was the circumstance which led the Lord Chancellor to say what we have mentioned, and to add that courts would take hold of any words they could to make the will conditional and contingent. Ambler, 561; 1 Ves. Sr. 192. It is to be noticed further that in the more important of the other cases relied on by the appellees the language or circumstances confirmed the absoluteness of the condition. For instance, "my wish, desire, and intention, now is that if I should not return, (which I will, no preventing Providence)." *Todd's Will,* 2 W. & S. 145. There the language in the clearest way showed the alternative of returning to have been present to the testator's mind when the condition was written, and the will was limited further by the word "now." Somewhat similar was *In the*

*Goods of Porter*, L. R. 2 P. & D. 22, where Lord Penzance said, if we correctly understand him, that if the only words adverse to the will had been "should anything unfortunately happen to me while abroad," he would not have held the will conditional. See *In the Goods of Mayd*, 6 P. D. 17, 19.

On the other hand, we may cite the following cases as strongly favoring the view which we adopt. It hardly is worth while to state them at length, as each case must stand so much on its own circumstances and words. The latest English decisions which we have seen qualify the tendency of some of the earlier ones. *In the Goods of Mayd*, 6 P. D. 17; *In the Goods of Dobson*, L. R. 1 P. & D. 88; *In the Goods of Thorne*, 4 Sw. & Tr. 36; *Likefield* v. *Likefield*, 82 Kentucky, 589; *Bradford* v. *Bradford*, 4 Ky. Law Rep. 947; *Skipwith* v. *Cabell*, 19 Gratt. 758, 782–784; *French* v. *French*, 14 W. Va. 458, 502.

*Decree reversed.*