IN RE WILL OF J. CLARK TINSLEY.

**WILLS:** Probate—Effect. The probate of a will decides no question but that which relates to its execution and publication.

**WILLS:** Nature and Essentials—Testamentary Character. Any writing by which a person undertakes to make disposition of his property or estate, to take effect after his death, is testamentary in character, and, if duly signed, witnessed, and, published, is entitled to admission to probate.

**WILLS:** Construction—Testamentary Character. An instrument reciting, "In case of any serious accident, after my just debts are paid, I direct that my aunt take entire charge of my estate for disposal as she sees fit," held testamentary in form, and not a mere trust or power expiring with the death of the aunt.

**WILLS:** Construction—Extrinsic Circumstances. Proof of extrinsic circumstances may sometimes be admitted to clear up am-

biguity in a will, or to identify the subject-matter of a devise or the person of a beneficiary, but it cannot be permitted to show that the testator intended anything other than that which is found in and implied from the instrument; and, if the will be unconditional on its face, it cannot, upon the strength of parol testimony, be adjudged to be conditional or contingent.

WILLS: Construction — Testamentary Character. An instrument, signed by decedent and witnessed, reading, "In case of any serious accident, after my just debts are paid, I direct that my aunt take entire charge of my estate for disposal as she sees fit," construed, and held to be testamentary in character, and not intended to become effectual as a will only in event of his death on a contemplated trip.

*Appeal from Polk District Court.*—George A. Wilson, Judge.

September 22, 1919.

A written instrument having been filed for probate as the last will and testament of J. Clark Tinsley, deceased, certain persons claiming to be the heirs at law of said Tinsley appeared and objected thereto, for reasons stated in the opinion. On trial to the court, the objections were overruled, and the instrument was adjudged to have been duly proved and established. The contestants appeal.—*Affirmed.*

*W. W. Wilcoxen* and *Frank H. Dewey,* for appellants.

*Carr, Carr & Evans,* for appellees.

Weaver, J.—The paper filed and admitted to probate as the will of the deceased is exceedingly brief, and in the words following:

"Des Moines, Ia., Sept. 2-15.

"In case of any serious accident, after my just debts are paid, I direct that my aunt Miss Mary E. Clark, take entire charge of my estate for disposal as she sees fit.

"J. Clark Tinsley.

"Witnesses:

"W. H. Barnard, Des Moines, Iowa.

"J. H. Fowler, Des Moines, Iowa."

The deceased appears to have left neither wife nor lineal descendants, and the contestants are surviving collateral heirs, of various degrees of relationship.

The objections filed to the admission of the will are as follows:

First. The instrument purporting to be the last will and testament of J. Clark Tinsley is not testamentary in character. It leaves nothing to be done after the death of the testator.

Second. Said instrument makes no provision for, or mention of, a disposition of property after, or in the event of, death of the purported testator.

Third. The instrument is directory only as to the management of the business of the decedent during his lifetime, and then only in case of any serious accident, whereby he is incapacitated. Said instrument on its face purports to appoint an agent, or attorney in fact, and is not testamentary in character.

Fourth. The said decedent met with no serious accident during his lifetime, and died a natural death. Said instrument cannot operate as a testamentary disposition of his estate, made in contemplation of death.

Fifth. Said instrument, which is alleged to be a will, rests upon a contingency, or the happening of an event, and refers to some future contingent event which did not take place; and said instrument is, therefore, ineffective as a will.

Sixth. Said instrument does not make any devise or distribution of property, nor did it vest the same in any person; it leaves the disposal of property to another person. The decedent did not, by said instrument, and could not, delegate to an agent the power to make a will for him.

Seventh. Said instrument does not vest a title in any-one, and no beneficiary is named or indicated therein, and the same is, therefore, void.

Eighth. If the said instrument created Miss Mary E. Clark a trustee, for the purpose of attending to any business and making a disposal of the property of J. Clark Tinsley, she having departed this life prior to the time of his death, the trust fails, and the instrument is void.

Ninth. If the said instrument created a life estate only in Miss Mary E. Clark, she having departed this life prior to the decedent, said devise has failed, and the property is subject to distribution among the heirs at law of said decedent.

By a later amendment to these objections, it was further alleged, in substance, that, even if construed to be a will, its utmost effect was to provide a power to be exercised by the said Mary E. Clark, or a life estate in her with power attached; and that, the said devisee having died in the lifetime of the testator, said provision never became effective.

The evidence produced on the trial tends fairly to show that Tinsley was a resident of Des Moines, where he was engaged in business. At the date of the instrument in controversy, he was contemplating a more or less extended visit to California. With the paper prepared by himself in its present form ready for execution, he called at the office of the Security Loan and Investment Company, with which he was accustomed to do business, and requested the president and vice-president of that institution to witness its execution as his will. They complied with his request, and attached their names to it as witnesses. Just what disposition Tinsley made of the paper at that time is not expressly shown; but we think it is inferable that he delivered it to the beneficiary named therein, by whom it was retained until her death, in the year 1917, when it passed

into the hands of the sole beneficiary of her will, Miss Olive M. Clark, who presented it for probate.

For a reversal of the order admitting the will to probate, appellants contend:

I. That, as a matter of proper practice, probate should be denied to an offered writing when, from the contents of the instrument, considered in the light of the facts shown on the hearing, it is inoperative as a will.

**1. WILLS: probate: effect.** Discussing this proposition, counsel admit, for the purposes of this branch of the discussion, "that the instrument offered was, in form, a will; and, under some of the decisions in this state, was, therefore, properly a matter for probate, leaving any question of construction to be settled afterward, under proper proceedings." This concession is necessitated by the repeated holdings of this court that the probate of a will decides no question but that which relates to its execution and publication. *Lorieux v. Keller,* 5 Iowa 196; *Fallon v. Chidester,* 46 Iowa 588; *Niemand v. Seeman,* 136 Iowa 713, 716; *Murphy v. Black,* 41 Iowa 488.

No question is raised against the sufficiency of the evidence of due execution and publication of this instrument; and, with the concession of counsel above cited, together with their further statement that the trial court "did not attempt to pass on anything except the sole question whether the instrument was sufficient in form to be admitted to probate as a will" (a sufficiency which, as we have seen, is conceded), there seems to be nothing left on which to base the first assignment of error. Even if it should be held (a proposition we are not here called upon to decide) that, under some circumstances, the court might, in its discretion, have entered upon an inquiry whether there was anything upon which the alleged will could operate, if probated, there is certainly no rule or precedent in this jurisdiction for holding it reversible error for the court,

in considering an application for admission of a will, to limit its attention to the fundamental inquiry whether the paper offered is "in form a will," and whether there is proof of its due execution and publication.

II. Of other objections made to the will, the following may be considered together. They are: (1) That the paper is not testamentary in character; (2) that it constitutes simply an attempt to create a trust,

2. WILLS: nature and essentials: testamentary character.

but fails to designate any beneficiary; and (3) that it does no more than provide a naked power to sell.

That the instrument may properly be treated as testamentary in character is conceded by counsel in the first division of their argument; and, while it is perhaps their privilege to assert inconsistent grounds of contest, they can hardly hope to convince the court that they are right upon both propositions. Any writing by which a person undertakes to make disposition of his property or estate, to take effect after his death, is testamentary in character; and, if duly signed, witnessed, and published, it is entitled to admission to probate. It makes little difference whether the language employed be that of a lawyer, skilled in all technicalities of the law of wills, or is prepared by the most ignorant and unpracticed scrivener, if, when candidly read and fairly construed, it reveals the purpose of the testator to make a disposition of his estate, or some part of it, which shall become effective and irrevocable at his death. It is not necessary that there shall be express technical words of devise or bequest, or an express declaration that its provisions shall take effect only at his death, if, when read as a whole, in the light of the circumstances under which the instrument was made, such is the reasonable meaning to be extracted from its terms. A very large proportion of wills presented to the courts for probate is of very informal character, and not a few have been prepared by the testa-

tors themselves. If held to any rigid test of form, very many of them would be held hopelessly bad; but the courts everywhere very properly feel bound to look to the substance, and, if the intent of testators be ascertainable, to give their wills effect accordingly. *Flynn v. Holman,* 119 Iowa 731.

There is no fair method of reading into the will in this case a purpose to give Mary E. Clark a mere naked power to sell the property for the benefit of the deceased or of his estate, or of any other person or persons named or unnamed. She is given posses-

3. WILLS: construction: testamentary character.

sion or charge of his entire estate, for her disposal as she may see fit. There is no direction, intimation, or suggestion, that she is to account therefor to any other person, or that any other person shall have any right or interest in the property or in the proceeds of its sale. The case of *Filkins v. Severn,* 127 Iowa 738, cited and relied upon by the appellant, is not in point, in fact or principle. In that case, the testator, in express terms, made another his trustee, to keep, care for, and dispose of certain property, for the benefit of the testator's estate, but failed to name any person or persons as beneficiaries of the trust so created; and the conclusion was inevitable that the trust was incomplete. As we have already noted, there is nothing of this character in the will now before us.

If the sole evidence of a transaction between A and B is that A delivers to B a sum of money or other item of personalty, saying to him, "Here, take this and manage and dispose of it as you please," no lawyer will contend that this alone establishes the creation of a trust. On the contrary, he would say that this fact, without other evidence to modify its effect, establishes a valid gift, for which the receiver is under no obligation, at law or in equity, to account to the giver or to his representatives. If such would

be the ruling as to an alleged gift *inter vivos,* why should we hold that a testamentary gift, in substantially the same words, is ineffective?

In *Rona v. Meier,* 47 Iowa 607, this court said:

"It is fully settled by authority that, if the first taker has the power, by the terms of the will, to dispose of the property, he must be considered the absolute owner."

The same rule was reaffirmed in *Law v. Douglass,* 107 Iowa 606, 607, and on frequent occasions since that time. Unrestricted power of disposal is an attribute of absolute ownership. Quite in point, also, is *Cheney v. Plumb,* 79 Wis. 602 (48 N. W. 668), where the instrument was, in form, as follows:

"*When I have done with my property,* I want John R. Cheney and his wife to pay all my debts and collect my dues and *dispose of my things as they think best,* only I want Sarah A. Williams to have my silver spoons * * * [and after several legacies] and *the remainder to keep and dispose of as they think best.*"

This was held sufficient to vest the property absolutely in the persons named. See, also, *Benz v. Fabian,* 54 N. J. Eq. 615 (35 Atl. 760). And that the trial court was justified in holding the instrument testamentary in form, and not a mere trust or power, expiring with the death of Mary E. Clark, there is no room to doubt.

III. The remaining objection, and the one on which counsel seem to rely with some confidence, is that, in any event, if the instrument, when made, may be considered a will, yet it was one of those peculiar or exceptional wills that are intended to become effectual only during a limited period, or in a certain event. This position is taken on the strength of the introductory phrase of the instrument, "In case of any serious accident," etc. From this expression, and from the fact appearing in evidence that

4. WILLS: construction: extrinsic circumstances.

the deceased was about to leave upon a trip to California, the court is asked to say that his intention in making the instrument was that it should become effective only in the event of his death while upon the contemplated trip, an event which, concededly, did not happen. In other words, counsel would have us construe the writing as if it read:

"I am about to make a trip to California, and if, by reason of any accident, I do not live to return to my home, then and in that event, I dispose of my estate as follows:" etc.

But to do this, the court must make a will for the testator, expressing an intent which is not to be found in the writing which he executed. Proof of extrinsic circumstances may sometimes be admitted, to clear up any ambiguity in the will, or to identify the subject-matter of a devise or bequest, or the person of a beneficiary; but it cannot be permitted to show that the testator intended anything other than or different from that which is to be found in or implied from the instrument itself. If the will be unconditional upon its face, it cannot be adjudged to be conditional or contingent upon the strength of parol testimony.

It may well be that the contemplation of a long journey and its possible dangers and exposures suggested to the mind of the deceased the wisdom of providing for the succession to his estate in the event of his death, and that, acting upon this thought, he prepared the paper in question. This would indicate no more than that the circumstances mentioned were the occasion for his act, and not at all that his death while on that trip was a contingency without which the will would not become operative.

In *Forquer's Estate*, decided by the Pennsylvania court, 216 Pa. 331 (66 Atl. 92), is found a case in principle much like the one at bar. The court there goes into an extensive citation and review of the authorities, and from these deduces the rule that:

"When the event which constitutes the contingency expressed in the instrument can be reasonably construed to have been the occasion for making the will at a particular time, rather than as the reason for making it in a particular way, it should be so construed; and further, that, unless it clearly appear from the instrument itself that it was not to operate in a certain event, it will be entitled to probate."

In that case, to which this rule was applied, the will expressly stated that he was about starting on a trip to Montana, and, knowing the uncertainty and risk of the journey, he therefore executed the will which later became the subject of litigation.

In the case before us, the fact that the deceased was about starting on a journey is not mentioned in the instrument, and the fact comes into the record only by the testimony of witnesses examined in the proceedings for its probate.

We are satisfied that upon no sound rule of law can the will in this case be refused probate because of any condition or contingency attached thereto.

It is suggested finally, though not pressed in argument, that the expression "In case of any serious accident," found in this instrument, is to be construed literally, and does not indicate that the provisions therein were made in contemplation of death. We cannot think there is merit in this objection. The deceased was still a young man, and it would not be strange or unnatural if, in the hopefulness and confidence of the average man in youth or early prime, the idea of death was associated in his mind most prominently with the possibility of accident, thus leading him to use the expression which he employed in the writing. Many persons shrink from the bald mention of their own possible demise, and, when the disagreeable subject

5. WILLS: construction: testamentary character.

must be spoken of, make use of some figure of speech or euphemistic phrase which suggests the idea in less repulsive form. In ordinary parlance, it is by no means unusual for a person, in stating his wishes or giving directions concerning what shall be done in the event of his death, to preface his statement with the expression, "If anything happens to me;" and in such case, no one misunderstands or doubts the meaning of the phrase. Words of this general character have often been considered by the courts, and held sufficient to indicate a testamentary intent. For example: "According to my present intention, should anything happen to me before I reach my friends in St. Louis, I wish to make a correct disposal," etc. *Ex parte Lindsay,* 2 Bradf. S. R. (N. Y.) 204. "In case of any fatal accident happening to me, being about to travel by railway, I hereby leave," etc. *In the Goods of Dobson,* L. R. 1 Prob. & Div. 88. "I intend starting tomorrow morning to Montana. Knowing the uncertainty and risk of a journey, I hereby," etc. *Forquer's Estate,* supra. "I request that, in the event of my death while serving in this horrible climate, or any accident happening to me," etc. 4 Swab. & Trist. 36. "Being about to travel a considerable distance, and knowing the uncertainty of life, think it advisable to make some disposition of my estate," etc. *Tarver v. Tarver,* 34 U. S. *174. "As I am about to leave home for Bangor, should any accident, etc., take me out of the world," etc. *In the Goods of Stuart,* 21 L. R. (Ireland) 105. "I am going on a journey, and may never return. And if I do not, this is my last request," etc. *Eaton v. Brown,* 193 U. S. 411 (48 L. Ed. 730). "If any accident should happen to me that I die from home," etc. *Likefield v. Likefield,* 82 Ky. 589. "If it please Almighty God to call me suddenly from this mortal life, and during my absence from home," etc. *In the Goods of Tylden,* 18 Jurist 136. See, also, *Bradford v. Bradford,* 4 Ky. L. R. & J. 947.

In each of these illustrative cases, it was held, not only that the instrument expressed a testamentary intent, but, in each and all, it was also held that the reference made by the testator to the cause which prompted or induced the making of the will did not make the bequest or devise either conditional or contingent upon any event except the testator's death.

We are satisfied that the record discloses no reversible error, and the judgment of the district court is—*Affirmed.*

LADD, C. J., GAYNOR and STEVENS, JJ., concur.