In the Matter of the Probate of the Will of HAGOP A. POONARIAN, Deceased.

JHUNPUSH ILLWANIAN and Others, Appellants; RICHARD MARLOWE and TACOOHIN MATOSSIAN, Respondents.

Fourth Department, May 3, 1922.

Wills — construction — will apparently conditional on death of testator on trip abroad — death occurred years later — trip contemplated when will executed — disposition of property had no rational connection with journey — gifts to natural objects of testator's bounty — testator unfamiliar with English language — words relating to trip treated as statement of reason for making will — probate allowed.

A will, containing language which, on its face, might be taken to indicate that the will was to be effective only in case the testator died on a trip abroad, should be allowed probate, although the testator's death did not occur on that trip, where it appears that the trip was contemplated when the will was executed; that the disposition of property provided had no rational connection with the journey; that the gifts were made to the testator's brother and sisters, the natural objects of his bounty, and the will was in English in the handwriting of the testator who was unfamiliar with the language, as the words relating to the trip may be treated as a mere statement of the testator's reason for making the will.

CLARK, J., dissents, with opinion.

APPEAL by Jhunpush Illwanian and others from a decree of the Surrogate's Court of the county of Monroe, entered in the office of said Surrogate's Court on the 18th day of November, 1921, denying probate to a certain written instrument offered as the last will and testament of Hagop A. Poonarian, deceased.

*Eugene Van Voorhis*, for the appellants.

*George A. Carnahan*, for the respondents.

SEARS, J.:

There was offered for probate as a will in the Surrogate's Court an instrument in the following words:

" H. A. Poonarian Rugs and carpet Storage to Rochester Carting Co. ~~six~~ five Bale Rugs and one Bax agen Rugs alltogether total 6 if any thing Happen to me in Constantinople or in ocean of all my will be I have four sisters and one Half Broders Mr. Deecran A. Poonarian his sher five Dolar th Balenc ~~equ~~ to be sher and sher alak Jhunpush Illwanian Gadar Zardaian Toomy Ajaimian

" Taquhin Matosian                              sher
    be Five

" Witnesses                      HAGOP A. POONARIAN
    " C. Irving Page
    " Howard L. Smaling
    " Wm. H. Burnett
    " E. E. Boynton

ROCHESTER, N. Y. U. S. A.
" *June 15th*, 1904."


Objections were filed to the probate by Richard Marlowe and Tacoohin Matossian, next of kin.    Upon the hearing it appeared that the instrument was in Poonarian's handwriting, was written in an account-book and had been executed comformably to the statute relating to the execution of wills. (See 2 R. S. 63, § 40; now Decedent Estate Law, § 21.)    Poonarian was an Armenian who had been engaged in the rug and carpet business in Rochester for twenty years, until his death in that city on the 27th day of October, 1920.    His trip to Constantinople referred to in the instrument sought to be probated was completed some sixteen years before his death.    The persons named in the instrument were Poonarian's next of kin.    The record contains no other information of importance.

The surrogate refused to probate the instrument as a will upon the theory that it was entirely conditional upon Poonarian's failing to survive a journey to Constantinople, which contingency did not occur.    The single question upon this appeal is whether the instrument was intended by the decedent to be effective only in case of his death during the trip to Constantinople which he contemplated at the time of its execution.

The practice is well settled to deny probate if it clearly appears from the contents of the instrument, coupled with the admitted facts, that it is inoperative in the event which has happened. (*Eaton* v. *Brown*, 193 U. S. 411.)

Surprisingly numerous cases are reported where questions similar to that involved in this case have arisen.    The tendency of the early English cases was to construe such an instrument strictly,

19

the leading case being *Parsons* v. *Lanoe* (2 Ambl. 557; 1 Ves. Sr. 189), upon which Mr. Justice Holmes in *Eaton* v. *Brown* (193 U. S. 411, 415) comments as follows: " In the leading case \* \* \* (*Parsons* v. *Lanoe*), Lord Hardwicke emphasizes the proposition that under the circumstances of that case no court of equity would give any latitude to support such a will. There the will began ' in case I should die before I return from the journey I intend, God willing, shortly to undertake for Ireland.' The testator then was married but had no children. He afterwards returned from Ireland and had several children. If the will stood, the children would be disinherited, and that was the circumstance which led the Lord Chancellor to say what we have mentioned, and to add that courts would take hold of any words they could to make the will conditional and contingent."

Later cases make clear that the fundamental question to be determined in each case is whether the event is mentioned by the testator as an inducement for making the will or whether the happening of the event is the condition which must be fulfilled before the dispositions become effective. The instruments involved usually have been made by persons unskilled in legal draftsmanship, and vary in their phraseology to such an extent that it would not be profitable to set forth the language of the various instruments, as each case rests upon the peculiar phraseology involved.

In *Eaton* v. *Brown* (*supra*) Mr. Justice Holmes said: " There is no doubt either of the danger in going beyond the literal and grammatical meaning of the words. The English Courts are especially and wisely careful not to substitute a lively imagination of what a testatrix would have said if her attention had been directed to a particular point for what she has said in fact. On the other hand, to a certain extent not to be exactly defined, but depending on judgment and tact, the primary import of isolated words may be held to be modified and controlled by the dominant intention to be gathered from the instrument as a whole. \* \* \* ' Courts do not incline to regard a will as conditional where it can be reasonably held that the testator was merely expressing his inducement to make it, however inaccurate his use of language might be, if strictly construed. *Damon* v. *Damon*, 8 Allen, 192, 197.' "

When Poonarian wrote this instrument, he was doubtless thinking primarily of his proposed trip to Constantinople and the dangers attending it, which naturally brought to his mind the idea of his possible death and the advisability of making a testamentary disposition of his property. The proposed trip probably also suggested to him the necessity of indicating in the instrument the place where some of his property might be found, hence the clause

about the bales and box of rugs. On the other hand, he used the word " will " in the clause " of all my will be," thus suggesting a final testamentary intention. The disposition too so far as appears rested on a fixed or permanent intention. The gifts are to his brother and sisters, the natural objects of his bounty, and the fact that more was given to some than to others could have had no rational connection with the journey he was about to undertake. These circumstances, the use of the technical word " will " which would be familiar even to such a foreigner and the fact that the disposition provided had no rational connection with the journey, taken in connection with the apparent unfamiliarity of the writer with the English language, offer grounds for considering the clause which gives rise to this controversy, a mere statement of the testator's reason for making a will. Similar circumstances proved convincing in the case of *Eaton* v. *Brown* (*supra*), although there as here upon a literal reading the dispositions would be contingent. Taking all the circumstances into consideration, I am of the opinion that effect will be given to the intention of the testator by construing the words relating to the trip as a statement of inducement merely.

The cases in this State are not in conflict with this view. The probate of an instrument was refused in *Matter of Bittner* (104 Misc. Rep. 112) but the condition there was as follows: " If any misfortune should happen to me and our Boy Herman John on the way of going abroad the Atlantic Ocean bound for New York, that if we both should loose our Life in this critical Time of European War, my Wife   *   *   *   shall be the sole and only Benefactor of my Estate and Property."

The contingency in that case was double and related not only to the testator's death upon the voyage but also to the death of his son. In such case the gift to the wife was naturally connected with the death of the son to whom, if living, the testator might reasonably have been expected to give some part of his estate.

The earlier cases (*Matter of Lindsay*, 2 Bradf. 204; *Thompson* v. *Connor*, 3 id. 366) are in accord with the decision here reached.

The decree of the Surrogate's Court should, therefore, be reversed, with costs to the appellant payable out of the estate, and matter remitted to the Surrogate's Court for further proceedings.

All concur, except CLARK, J., who dissents in an opinion.

CLARK, J. (dissenting):

I dissent and vote for affirmance of the surrogate's decree.

The will in question which was denied probate, was practically without punctuation, and is in the following language:

Fourth Department, May, 1922.       [Vol. 201

"H. A. Poonarian Rugs and carpet Storage to Rochester Carting Co. ~~six~~ five Bale Rugs and one Bax agen Rugs alltogether total 6 if any thing Happen to me in Constantinople or in ocean of all my will be I have four sisters and one Half Broders Mr. Deecran A. Poonarian his sher five Dolar th Balenc ~~equ~~ to be sher and sher alak Jhunpush Illwanian Gadar Zardaian Toomy Ajaimian.

"Taquhin Matosian sher be Five."

In construing wills, the court can supply punctuation and transpose sentences if that will assist in determining the intention of a testator. (*Matter of Farmers' Loan & Trust Co.*, 189 N. Y. 202.)

I am of the opinion that the intention of this testator can be ascertained if we punctuate the will without putting a period in the middle of a sentence. By following this course and having a period at what was evidently intended to be the end of a sentence, it would show that testator's intention was to have the instrument propounded as a will, effective only on condition of misfortune overtaking him on his contemplated trip to Constantinople. This meaning could be expressed without changing a word or transposing a sentence of the will by placing a period at the end instead of in the middle of a sentence, and it would read as follows:

"H. A. Poonarian, Rugs and carpets, storage to Rochester Carting Co., five Bale Rugs and one Bax agen Rugs alltogether total 6. If anything Happen to me in Constantinople or in ocean, of all my will be I have four sisters and one Half Broders, Mr. Deecran A. Poonarian. His sher five Dolar. The Balenc sher and sher alak," etc.

This construction is not strained but is natural, and would, in my opinion, carry out testator's intention to have his property go as he directed in his will, " if anything Happen to me in Constantinople or in ocean." As I view it, this was a conditional or contingent will, to become effective only in case anything happened to testator in Constantinople or on the ocean. Concededly, nothing did so happen to him on that trip, and he returned to his home in Rochester in safety and continued his business of selling rugs until his death. The event referred to in his will not having happened, the will became ineffective. I do not regard the language used by testator with reference to Constantinople and the ocean as the occasion or reason for making the will. If that had been his purpose, in using language to express a reason or occasion for making the will, he would have begun the instrument by referring to his contemplated trip to Constantinople with the following, or similar, words, " Being about to go to Constantinople," etc., and then followed it with the disposition of his property. He did not do that, but, after stating what property he had and where

it could be found, he said, "If anything Happen to me in Constantinople or in ocean   *   *   *." To my mind, that clause was intended as a condition or contingency which was to occur before the will became operative, and that it did not and was not intended to furnish the occasion or excuse for making a will. I can see no reason why testator should refer to his contemplated trip to Constantinople right in the middle of the will, unless he meant what he said when he used the language "If anything Happen to me in Constantinople or in ocean." If it was a condition or contingency that he referred to, on the happening of which the will was to be operative, the conceded failure of the condition to happen operated to defeat the will. (40 Cyc. 1082; *Matter of Bittner,* 104 Misc. Rep. 112.)

It is my opinion that what testator meant was, that if anything happened to him on his contemplated trip to Constantinople and he should not return, that then, and then only, the will should be operative and the property referred to therein go as he there directed. He having returned in safety and continued his business without the happening of the event referred to in his will, it became inoperative, and the decree denying probate should be upheld. I, therefore, vote to affirm.

Decree reversed, with costs payable out of the estate, and matter remitted to the Surrogate's Court for further proceedings in accordance with the opinion.