[S. F. No. 16884. In Bank. Sept. 22, 1944.]

Estate of ARTURO MICHELETTI, Deceased. FOSCA PUCHEU, Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), as Executor, etc., Respondent.

Bernard Nugent and John J. Taaffe for Appellant.

J. W. Coleberd for Respondent.

TRAYNOR, J.—Arturo Micheletti died September 21, 1940, at sixty years of age, leaving a net estate of $120,000 and a will executed March 26, 1940. Surviving him were two adult children by his divorced wife, a son, Otello Micheletti, and a daughter, Fosca Pucheu (the present petitioner), his second wife, Teresa Piotti Micheletti, and two minor children by his second marriage, Arturo Amadeo Micheletti, born July 24, 1928, and Manlio Elmo Micheletti, born April 8, 1930. The will was admitted to probate. On June 10, 1941, appellant filed her first amended petition for partial distribution of the estate and claimed $10,000 as heir at law, contending that the residuary bequest of her father's will creating a testamentary trust violated the rule against perpetuities as well as the rule against restraints on alienation in sections 715, 716 and 771 of the Civil Code and was therefore void. From the order of the superior court denying her petition, appellant brought this appeal.

Although appellant's petition is directed solely at the validity of the trust of the residue, the other parts of the will as well as the testator's general plan are material to the consideration of the problems presented. The testator's personal effects, household furnishings and automobiles are bequeathed to his wife for life and upon her death to his two minor sons

and to "all of my children born of my present marriage after the date of this will and to those of them surviving me, and to the surviving issue of them predeceasing me by right of representation." It will appear that this language is essentially similar to the dispositive language in the trust of the residue set forth below. Mario Morosi, a son by a former marriage of decedent's second wife, is bequeathed $1,000. Appellant and her brother Otello are given indefeasible bequests of $2,500 each. In addition, Otello is the devisee of a parcel of real property, and a trust is created for his use with a corpus of $40,000 to provide him with monthly payments of $60 until his death, at which time the trust is to terminate and the balance of the trust estate is to be paid into the testamentary trust of the residue "created for my said children of my present marriage, and which said trust estate shall be disbursed in accordance with the trust estate for my said children herein created for that purpose." The provisions of the will for the creation and termination of the trust are:

"Tenth: All the rest, residue and remainder of my estate, whether the same be real, personal or mixed, of whatever kind or character, and wherever the same may be situate, of which I may die seized or possessed, or in which I may have any interest or right of testamentary distribution or power of appointment at the time of my death, I hereby give, devise and bequeath to Bank of America National Trust and Savings Association, a national banking association, in trust, nevertheless, for the use and benefit in equal shares to my sons, Arturo Amadeo Micheletti and Manlio Elmo Micheletti, to all of my children born after the date of this my last will and testament, and to those of them surviving me and to the surviving issue of any of them predeceasing me by right of representation. Said balance of said estate is to be held by said trustee, subject to the uses, terms, conditions and limitations particularly set forth."

Subdivision (a) provides for the "education, maintenance and support of such children . . . Until such child shall have attained the age of twenty-five years. . . ." Subdivision (b) provides for a present vested gift from the trust estate of $5,000 to each of the minor sons with enjoyment postponed until they reach the age of twenty-one years respectively, subject to divestment by failure to survive the testator or by the

testator's surviving until the sons reach twenty-five years of age.

"(c) The trust herein created for my said sons and their issue shall cease and terminate as to one-half (½) thereof then remaining when my said children, Arturo Amadeo Micheletti and Manlio Elmo Micheletti, or the survivor of my said sons shall have attained the age of twenty-five (25) years. Upon the termination of that portion of said trust by the happening of said event, viz., the attaining of the age of twenty-five (25) years by my said sons, or the survivor of them, one-half (½) of said trust estate then remaining shall be paid, delivered and conveyed in equal shares to said Arturo Amadeo Micheletti and Manlio Elmo Micheletti, or to the survivor of them and to the surviving issue of either of them then deceased by right of representation; the one-half (½) of the said trust estate then remaining to be held in trust in accordance with the terms hereof until my said sons, Arturo Amadeo Micheletti and Manlio Elmo Micheletti, or the survivor of said sons shall have attained the age of thirty-two (32) years, when such trust shall cease and terminate and all the trust estate then remaining in the hands of the testamentary trustee shall be paid, delivered and conveyed in equal shares to said Arturo Amadeo Micheletti and Manlio Elmo Micheletti in equal shares, or to the survivor of them and to the surviving issue, if any, of either of them then deceased by right of representation.

"(d) It is my will and I hereby declare that any children born of my present marriage after the execution of this will and the survivor or survivors of them, and to their surviving issue, if any, by right of representation, shall share in said trust estate to the same extent and in equal manner and in accordance with the same terms and conditions as herein fixed and provided for my two designated sons, Arturo Amadeo Micheletti and Manlio Elmo Micheletti.

"Eleventh: None of the beneficiaries herein designated or named other and except Fosca Pucheu, Otello Micheletti and Mario Morosi shall receive any part of my estate other and except the provisions herein specifically made for them until such beneficiary shall have reached the age of twenty-one years.

"Twelfth: . . . none of the said beneficiaries shall, in any

event, either jointly or severally sell, assign, transfer, convey, pledge, hypothecate or otherwise encumber his, her or their interest or interests under these trusts. . . .''

■ Appellant contends that the interests created in the issue of Arturo and Manlio by the terms of the trust in article X and the limitations placed thereon by articles XI and XII violate the rule against perpetuities and the prohibitions against restraints on alienation in the Civil Code. It is appellant's position that the rule against perpetuities is in force in this state by reason of article XX, section 9, of the California Constitution prohibiting perpetuities except for eleemosynary purposes and section 4468 of the Political Code, which makes the common law of England the rule of decisions in the courts of this state insofar as it is consistent with the laws and Constitution of the state. There is considerable uncertainty as to the soundness of this position (see 2 Simes, Law of Future Interest [1936], § 572, p. 473; Rest., Property [Group No. 1], Proposed Final Draft No. 5 [1944], pp. 109-110), but it is unnecessary to determine that question in this case, for the executory interests created by the will in favor of the issue of the minor sons must vest, if at all, within lives in being and are therefore not within the operation of the rule against perpetuities, which applies solely to remoteness of vesting. Each son is given an equitable interest in the trust property for years and a vested legal interest therein in remainder subject to divestment by death before twenty-five years and to divestment of his share in the one-half of the corpus remaining if he should survive to twenty-five but die before thirty-two. These interests are prevented from merging by the interposition of the trust. If one son should die leaving issue surviving before reaching the age of twenty-five, the executory interest would vest in his issue subject to defeasance if the surviving son should die before reaching the age of twenty-five, or subject to divestment as to one-half if the surviving son should survive to the age of twenty-five but should die before reaching thirty-two. Since the executory interests in remainder created in favor of the issue must therefore vest, if at all, within lives in being at the time of the creation of the limitation, which is here the time of the death of the testator (Civ. Code, § 749) they do not violate the rule against perpetuities. (See Gray, Rule

Against Perpetuities (4th ed.) § 201; 2 Simes, *op. cit. supra,* § 496.)

It has been suggested that the phrase in article XI "other and except the provisions herein specifically made for them" prevents that article from applying to any provision in the will, including article X, specifically made for any beneficiary and thus prevents a violation of the rule against restraints on alienation. (See Civ. Code, §§ 715, 716 and 772.) It is unnecessary to pass on the soundness of this suggestion or to determine whether the gifts to issue are invalidated by the limitations in articles XI and XII or whether they stand and the limitations only are rejected (see, Gray, The Rule Against Perpetuities (4th ed.) § 423, p. 437; Leach, *Perpetuities In A Nutshell,* 51 Harv.L.Rev. 638, 655), for if the interests in favor of the issue are invalid they are separable from the interests created in Arturo and Manlio.

The leading case in this state setting forth the principle of separability is *Estate of Willey,* 128 Cal. 1, 11 [60 P. 471], which reduced the problem to a determination of the testator's intention pursuant to Civil Code, section 1317 (now Prob. Code, § 101), which provides that ". . . A will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent, it must have effect as far as possible." Applying this principle, the court formulated the rule that "valid trusts should not be disregarded because in the instrument creating them one particular invalid trust is declared, unless the latter is so inseparably blended with the others that it cannot be eliminated without destroying the main intent of the trustor, or working manifest injustice to the other beneficiaries." This principle has become a settled rule of decision in this court. (*Estate of Fair,* 132 Cal. 523, 532 [60 P. 442, 64 P. 1000, 84 Am.St. Rep. 70]; affirmed 136 Cal. 79, 81 [68 P. 306]; *Nellis* v. *Rickard,* 133 Cal. 617, 620 [66 P. 32, 85 Am.St.Rep. 227]; *Estate of Pichoir,* 139 Cal. 682, 685-686 [73 P. 606]; *Sacramento Bank* v. *Montgomery,* 146 Cal. 745, 747 [81 P. 138]; *Estate of Campbell,* 175 Cal. 345, 351 [165 P. 931]; *Estate of Whitney,* 176 Cal. 12, 19 [167 P. 399]; *Estate of Phelps,* 182 Cal. 752, 763 [190 P. 17]; *Estate of Van Wyck,* 185 Cal. 49, 62 [196 P. 50]; *Estate of Maltman,* 195 Cal. 643, 654 [234 P. 898]; *Estate of Troy,* 214 Cal. 53, 59-64 [3 P.2d 930]; *Estate*

*of Gump,* 16 Cal.2d 535, 547 [107 P.2d 17]; see Rest., Property [Group No. 1] Proposed Final Draft No. 5 [1944], p. 111; Rest., Trusts [1936], § 65, comment d; Freund, *Three Suggestions Concerning Future Interests,* 33 Harv.L.Rev. 526, 531; Leach, *Perpetuities In a Nutshell,* 51 Harv.L.Rev. 638, 656-657.)

■ The statutory rules against restraints on alienation have a beneficial purpose, but they are not punitive.

■ Testamentary dispositions that are otherwise valid are not necessarily invalidated by illegal limitations, and the testator's purpose must control so far as it reasonably can. (See *Eaton* v. *Brown,* 193 U.S. 411, 413 [24 S.Ct. 487, 48 L.Ed. 730]; *Landram* v. *Jordan,* 203 U.S. 56, 63 [27 S.Ct. 17, 51 L.Ed. 88]; and *Boal* v. *Metropolitan Museum of Art,* [S.D. N.Y. 1923], 292 F. 303, 304; see, also, 27 Cal.L.Rev. 86, 87; Freund, *op. cit. supra,* p. 533.)

■ It would hardly be possible to discover whether a testator actually intended that a prior limitation should stand if a subsequent limitation failed, for the testator would ordinarily not anticipate the partial ineffectiveness of his disposition. (See Gray, The Nature and Sources of the Law [appendix VIII, 1909], § 702; Rest., Property [Future Interests, part 1 and 2, 1936], Introductory Note to chap. 16, p. 930, Monograph on Ineffectiveness of an Ultimate Executory Interest, appendix, p. 34.) Nevertheless, there must be rules governing testamentary dispositions that are partially ineffective. The objective of the rules formulated is to ascertain what the testator would have intended had he foreseen a partial failure of his expressed plan. (*Gray, op. cit. supra,* § 703; Rest., Property, *op. cit. supra,* p. 930.) Decisive weight is given the judicially construed intention of the testator. (Rest., Property, *op. cit. supra,* § 228.) Material considerations are the language of the conveyance, including the extent to which the use of the same phrase or clause to define the duration of the prior interest and to attempt the creation of the succeeding interest is to be regarded as a mere economy of words in the creation of two independent or two interdependent interests; the circumstances surrounding the disposition; the ineffectiveness of the attempted succeeding interest; whether the testator prepared the will or employed an attorney to do so, and the apparent skill of the draftsman in the use of language or of legal phraseology; knowledge or

belief of the testator concerning the claimants upon his bounty, and the age of the testator and of the donees. (Prob. Code, § 105; Rest., Property, *op. cit. supra,* comment g; Rest., Property [Future Interest, parts 3 and 4, 1940] § 242 and comments, pp. 1199-1205.)

The application of these principles to the facts of the present case leads to the conclusion that if the executory interests in the issue of Arturo and Manlio were invalid, the testator would have preferred the trust to stand free of such interests. The purpose of the trust was to provide for the support and education of the children of the second marriage and to preserve the bulk of the testator's estate for the children until they were old enough to manage large sums of money. The repeated reference to Arturo and Manlio by name throughout the will, the fact that an attorney drafted the will, the gift to them of the remainder interests in the personal effects of the testator, their youth at the time the will was drawn, the age of the testator, and the amount of the testator's estate to go into the testamentary trust in relation to the gifts to appellant and Otello give rise to the inference that the minor sons were the special objects of the testator's bounty. The language and draftsmanship of the will strengthen this view. The care used in selecting the dispositive language for the successors to the testator's personal effects and the beneficiaries of the trust of the residue indicates an awareness of the rule against remoteness in vesting. It is in marked contrast to the lack of care in the phrasing of the executory interests, notably the failure to provide for the contingencies of death of the children of the second marriage before the times for distribution of the trust estate. In these events the testator would die intestate as to the bulk of his property. These factors indicate that the testator's first concern was for the children of his second marriage, and that had he contemplated possible failure of the executory limitations to their issue he would have provided that the trust for these children stand.

Appellant relies upon *Estate of Whitney, supra; Estate of Van Wyck, supra; Estate of Maltman, supra;* and *Sheean* v. *Michel,* 16 Cal.2d 324 [57 P.2d 127], in opposing the rule of separability in the present case. In each of these cases, however, the court refused to apply the rule, on the ground that

it would defeat the entire scheme and purpose of the testator. Thus, in *Estate of Whitney, supra,* at 19, the court prevented a result that would have been contrary to the testator's plan "and to which it cannot be supposed that he did consent or would have consented." In *Estate of Van Wyck, supra,* at pages 62, 63, the court did not countenance a separation of the invalid part of a trust from the valid part, for the beneficiaries would then have owned the remainder and no purpose could be served by the interposition of the trust. In the present case the very purpose of the trust was to support the children and to withhold the remainder until they were capable of managing it. The valid part of the trust in *Estate of Maltman, supra,* at page 653, was not allowed to stand because it would have resulted in defeating the testator's plan and was unfair to one of the beneficiaries. The trust was for the equal benefit of the testator's son and daughter, and if the otherwise valid provisions had been preserved, the daughter would have received three-fourths of the estate and the son but one-fourth, contrary to the testator's wishes. In *Sheean v. Michel, supra,* at 329, the court refused to make a separation that would have defeated not only the express purpose of the testator but also the claims of creditors.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., Carter, J., and Schauer, J., concurred.