## WOOD v. GREIMANN.
### No. 11553.

Circuit Court of Appeals, Ninth Circuit.

Jan. 19, 1948.

Rehearing Denied Feb. 18, 1948.

Charles E. McPherren, of Oklahoma City, Okl., for appellant.

Cecil H. Clegg, of Fairbanks, Alaska, for appellee.

Before DENMAN, BONE, and ORR, Circuit Judges.

ORR, Circuit Judge.

Appellee filed for probate in the Commissioner's Court, sitting as a probate court in Fairbanks, Alaska, an instrument in the form of a letter which was alleged to be the last will and testament of J. M. Pearl, deceased. The said letter, dated September 26, 1931, is in the handwriting of said deceased and is addressed to Paul Greimann. The portion of the letter material here reads as follows:

"We have to give reference as nearest of kin to be notified in case of death. I gave you my boy, and in case I die, if they do operate I bequeath you my belongings and property all except $100.00 to be given Robert Gallagher to help him in his education. I would ask to be buried here in Arlington Cemetary. I do not expect to die but to be on my way· home by the 25th of Oct. or soon after as they are going right after my case properly.

"* * * I am so anxious to get home and see you all and the babes. It has been a long summer I tell you.

"With love and best wishes to all

"As ever,

"Dad      J. M. Pearl"

Appellant, Byron W. Wood, is a brother of decedent, J. M. Pearl. He has been appointed administrator of J. M. Pearl's Estate in the state of Oklahoma. Appellant objected to the probate of the instrument above referred to and his objection was sustained by the Probate Court on the ground that the bequest contained in said letter was conditioned upon an event which did not occur, namely, "death from an impending operation". The District Court of Alaska took a different view and admitted to probate the said instrument as the last will and testament of decedent; hence, this appeal.

Evidence was introduced at the hearing before said District Court and appears in the transcript on appeal. While not presented in proper form it has been stipulated that we may consider it. This evidence discloses a close association and friendship to have existed between appellee and the deceased during the years prior to the writing of said letter.

It appears that appellee, when a lad of 18 years, met Pearl some 20 years his senior, in the city of Chicago. They became friends and resided together in Chicago for three years. Pearl and appellee then moved to Alaska and became associated in a garage business under the name of Pearl and Pearl. Appellee addressed Pearl as "Dad"; this form of salutation was used by appellee at Pearl's request and in turn Pearl addressed appellee as "son". The garage business partnership continued for seven years.

Because of illness Pearl journeyed to Washington, D. C., and was admitted to the Veterans' Hospital in that city. Sometime prior to September 26, 1931, an order discharging Pearl from said hospital seems to have been made, but according to the letter dated September 26, 1931, written by Pearl to appellee, said order of discharge had been revoked and Pearl had been transferred to a different hospital where he had undergone a number of physical examinations. In the letter of September 26, 1931, he described in detail a number of subjective symptoms and concluded the letter in the words hereinbefore set out. Pearl recovered his health and returned to Alaska where he remained until illness required him to return to the mainland some ten years later. He died July 9, 1944, in the Veterans' Hospital at Muskogee, Oklahoma. He left no will other than the bequest contained in the said letter of September 26, 1931.

Our question is: Was the bequest contained in said letter contingent upon the death of Pearl resulting from an operation which Pearl, at the time of writing the letter, thought might be performed? If in his reference to an operation Pearl was merely stating the circumstance which induced him to make the testamentary disposition, then the bequest to appellee was not contingent.

■ The circumstances surrounding the writing of the letter lend themselves to the latter construction. Appellant repeatedly makes reference to an impending operation in support of his argument that the bequest was contingent upon decedent's death from an operation, if performed, but as we read the record such a statement finds no support therein. We find in the record no reference that an operation had been advised or contemplated by attending physicians. We think the reference to an operation came into the mind of Pearl because he considered it the only agency which might cause death after the thought of death was suggested by the request of the hospital authorities to give the name of the nearest of kin to be notified in case of death. Naturally that request brought to mind the necessity of providing for disposition of his estate. He thought of appellee over all of those bearing a blood relationship. His thoughts were not of a brother in Oklahoma but of "Dear (Boy) Paul." The association of appellee and Pearl had been such that it is logical to conclude that Pearl desired appellee to be the recipient of his property at his death, no matter when it occurred or in what manner occasioned. In speaking of the operation Pearl was merely speaking of the circumstances which induced him to make the testamentary disposition. In so construing the language of the letter we are in accord with the tendency of the courts to construe similar language as the reason for executing a will rather than as a precedent to its validity if such a construction can reasonably be made. Page on Wills, Lifetime Edition, vol. 1, § 96, pp. 209, 210.

■ Furthermore such a construction follows the general rule that intestacy is not favored.[1]

Instances of wills containing words of clear condition if literally construed which were none the less held to be absolute and valid are: In re Kayser's Estate, Pa.Orph. 38 Berks 205, the following words were used: "September 15 '45. In case something should happen to me before I have a chance to see Mr. Trexler, this is my last will & testament. * * *"

In re Forquer's Estate, 216 Pa. 331, 66 A. 92, 95, 8 Ann.Cas.1146: "Should anything befall me while away or that I should die". See also, Barber v. Barber 368 Ill. 215, 13 N.E.2d 257.

In the case of Eaton v. Brown, 193 U.S. 411, 24 S.Ct. 487, 48 L.Ed. 730, the Supreme Court of the United States considered the following letter offered for probate as a

---

[1] 69 Corpus Juris, § 1147, p. 91.

will and objected to on the ground that it was merely a conditional bequest:

"Washington, D. C. Aug. 31"/001.

"I am going on a Journey and may, not ever return. And if I do not, this is my last request. The Mortgage on the King House, which is in the possession of Mr. H. H. Brown to go to the Methodist Church at Bloomingburgh All the rest of my properday both real and personal to My adopted Son L. B. Eaton of the life Saving Service, Treasury Department Washington D. C., All I have is my one hard earnings and and I propose to leave it to whome I please. Caroline Holley."

In holding this instrument to be an absolute bequest the court, quoting from an earlier opinion [Damon v. Damon, 8 Allen, Mass., 192, 197] wrote: " 'Courts do not incline to regard a will as conditional where it can be reasonably held that the testator was merely expressing his inducement to make it, however inaccurate his use of language might be, if strictly construed.' "

The Supreme Court in Eaton v. Brown, supra, though recognizing the danger in going beyond the literal meaning of the words "if I do not [return]" concluded that the nature of the gifts, one to a church and one to a person she called her adopted son, indicated a dominant intent to make an unconditional disposition of property; that the reference to the journey expressed in the letter in question in Eaton v. Brown, supra, resulted from the natural tendency to express the "general contingency of death in the concrete form in which just then it was presented to her imagination."

So in the instant case the reference to an operation resulted from the natural tendency of Pearl to express the general contingency of death in the form in which he thought it most likely to occur if at all. Thus he made a disposition of his property to the one for whom he held the greatest affection, the boy and man who had been his close friend and companion for twenty-three years and whom he (Pearl) had come to think of and address as his son.

The order of the District Court admitting the will to probate is affirmed.