Proceeding for the probate of the will of Jane Menge, deceased. Granted.

Robert O. Jones, for proponent.
Charles A. Miller, for contestants.
C. Lansing Jones, special guardian for John Menge.

CALDER, S. The usual answer of mental incapacity and undue influence was introduced in this proceeding, which was afterwards amended to include allegations of noncompliance with the requirements of the statute in reference to the execution of the instrument offered for probate. Upon the amendment the contestants rely, no testimony being offered to sustain the other objections. The statute provides that certain formalities must be complied with to entitle a will to be admitted to probate. It is not necessary that any particular form be followed, or that any rigid rule of construction of the statute be imposed. Any other interpretation would be to confine the execution of testamentary documents within a narrow compass, and would in many instances defeat the expressed intentions of a person. The statute is satisfied if there be a substantial compliance with its requirements.

The instrument in question was prepared by George R. Wright, at the home of the decedent, and witnessed by William Hughes and Alexander E. Morgan. By the evidence of Wright it appears that the testatrix, after requesting that some paper be handed him, said, "I want you to draw a will for me." It was drawn in her presence, pursuant to her directions. The witnesses were summoned, and Mr. Wright, according to his testimony, said: "Mrs. Menge, here are Mr. Morgan and Mr. Hughes. Do you wish them to act as wit-

nesses to this, your will?" To which she replied, "Yes, I do." Holding the will in his hands, he said, "You will have to sign it then." She answered, "I cannot write my name." She placed her fingers on the penholder and Wright wrote her name. The witnesses then signed their names. After the will was folded up, Wright said, "Mrs. Menge, what shall I do with this will?" She said, "You can give it to me." Hughes agrees with him as to what occurred in the presence of the subscribing witnesses. Upon the other hand, Morgan testifies that Wright held up the paper in his hand, and asked the testatrix if she wanted them to sign "those papers"; that the witnesses signed their names to the instrument before the testatrix signed; that at no time was the word "will" mentioned, or was there anything said or done to indicate that the instrument was declared by the testatrix to be her last will and testament, or that she requested them to sign any will as witnesses. He therefore testifies against the execution of the will. The evidence of the subscribing witnesses is ordinarily, in a great measure, accepted as a true statement of the facts, but it is not conclusive. It is subject to be contradicted by other evidence, and in some cases by surrounding circumstances. It has been held not fatal to the valid execution of a will where one of the attesting witnesses has denied that the usual formalities have been observed. In re Cottrell, 95 N. Y. 329; Orser v. Orser, 24 N. Y. 51. It is evident that the testatrix understood the testamentary character of the instrument she signed. The scrivener had with him a book of forms, and it is to be presumed that he followed the directions therein contained. The witness Morgan may not have given such attention to the formalities as to impress upon his mind what was actually said and done. His recollection may be faulty, without intending to misstate any of the facts. All the circumstances attending the execution are corroborative of the evidence given by Wright and Hughes, and their evidence may be considered a true statement of the transaction. The attestation clause is complete, reciting the requisite formalities, and the will on its face is in due form. Following the rule laid down in Orser v. Orser and in Re Cottrell, above cited, the attestation clause must give some weight in determining this controversy. The will was, therefore, signed by the testatrix in the presence of the witnesses, after which the witnesses signed; and, if this contest is to succeed, it must be on the lack of publication and request for the witnesses to sign. The onus is upon the party seeking to sustain the instrument. The only evidence upon the question of publication and request is the statement made by Wright to Mrs. Menge, and her affirmative answer in response thereto. If this be not a sufficient publication and request, the probate of this instrument must be denied. It must be presumed from this evidence that Wright was acting for the testatrix, and what he did was with her consent, and by her directions. When he made the statement to the witnesses, to which she answered in the affirmative, it is the same as though the words were uttered by herself. Gilbert v. Knox, 52 N. Y. 125; Peck v. Cary, 27 N. Y. 9. It is not necessary that the publication and request be em-

bodied in separate statements. "All that the statute requires is that the act of publication and the act of requesting the witnesses to sign shall both be performed. These acts are distinct in their nature or quality, but their performance may be joint or connected." Coffin v. Coffin, 23 N. Y. 9. Nor is it essential that any precise words be used, or that the exact phraseology of the statute be employed, to observe the formalities with reference to the publication and request. The communication made by the testatrix through Wright to the witnesses was a valid publication, and a proper request. It was made known to them that the instrument was her will, and that they should sign the same as the attesting witnesses. This constituted the observance of the requisite legal formalities. Coffin v. Coffin, 23 N. Y. 9; In re Hunt, 110 N. Y. 278, 18 N. E. 106; Lane v. Lane, 95 N. Y. 494; Darling v. Arthur, 22 Hun, 84. A due execution having been established, a decree admitting the instrument in question to probate should therefore be entertained, with costs to the proponent, payable out of the estate.

Decreed accordingly.

<hr/>

(13 Misc. Rep. 486.)

## In re HARTMAN'S ESTATE.

(Surrogate's Court, Herkimer County. July, 1895.)

1. WITNESS—CONVERSATION WITH DECEDENT.

The assignee of a claim against a decedent's estate may testify as to conversations between decedent and the assignor, in which the assignee took no part, concerning the claim, as Code Civ. Proc. § 829, prohibiting testimony as to communications with decedents in certain cases, applies only to communications between the witness and decedent.

2. INTEREST—UNLIQUIDATED DAMAGES.

A claim against a decedent's estate for services rendered is for unliquidated damages until the amount is ascertained, and therefore draws interest only from the time of ascertainment.