In the Matter of Proving the Last Will and Testament of MICHALINA DYBALSKI, Deceased.

STANISLAW DYBALSKI and LUDWIG DYBALSKI, Appellants; JOZEFA MARCHLEWICZ, as Executrix, etc., of MICHALINA DYBALSKI, Respondent.

Fourth Department, January 13, 1922.

Wills — execution — testatrix unable to speak English language — one witness unable to understand language of testatrix — will duly published and request to subscribing witnesses sufficient where made in foreign language and interpreted by one subscribing witness to other.

The will of a woman unable to speak the English language but who could speak and read the Polish language was duly and properly published as required by law, and the request to a subscribing witness was sufficient, where it appears that the will was drawn by one of the subscribing witnesses who could speak both languages; that it was read to the testatrix by said subscribing witness and that she stated to him in the Polish language that it was her will and that she wanted him and the other subscribing witness, who could not understand Polish, to sign it as witnesses; that both witnesses saw her sign the instrument and then they signed as witnesses in her presence and in the presence of each other, and that the subscribing witness who understood both Polish and English interpreted to the other subscribing witness what the testatrix had said.

HUBBS, J., dissents.

APPEAL by Stanislaw Dybalski and another from a decree of the Surrogate's Court of the county of Erie, entered in the office of said Surrogate's Court on or about the 7th day of April, 1920, admitting to probate the instrument offered by the petitioner as the last will and testament of Michalina Dybalski, deceased.

*Henry Adsit Bull,* for the appellants.

*Frank M. Spitzmiller,* for the respondent.

Clark, J.:

Testatrix, Michalina Dybalski, a resident of Buffalo, N. Y., and about seventy years of age, executed her will on the 20th day of June, 1919. She was a Polish lady and could speak and read the Polish language, but could not speak English. The will was drawn at her request by a Mr. Treptau, a friend of the testatrix, who could speak both English and Polish.

The will was signed in the presence of two witnesses and both saw testatrix sign it. Mr. Treptau was one of the subscribing witnesses, and John Cappellar was the other. Mr. Cappellar could understand English, but was unfamiliar with the Polish language.

No formal objections to the probate of this will were ever filed, but before it was admitted to probate preliminary examination of the subscribing witnesses and of a third party who was present when the will was executed was held before the surrogate.

After this examination was concluded, counsel who represented two interested parties asked that probate be denied on the ground that the will was not published as required by law, and particularly that there was an insufficient request to the witness Cappellar to sign the will.

From the evidence adduced at the examination of these witnesses, I am of the opinion that a clear question of fact was presented for the surrogate to pass upon in regard to the execution of the will.

No question is raised as to the testamentary capacity of testatrix, or that any improper or undue influence was exercised by anybody to induce her to make the will.

From all the evidence the surrogate was justified in finding that testatrix desired to make her will and asked her friend Mr. Treptau to prepare the instrument and that she told him in detail what she wanted done with her property; that he drew the will as she directed; and that after it was done he told her she would have to have another witness and he procured the attendance of Mr. Cappellar. The conversations between testatrix and Mr. Treptau were in Polish. When Cappellar appeared, Mr. Treptau took the will and had a conversation with the old lady and read it to her and she said it was as she wanted it and said it was her will and

wanted these two men, Treptau and Cappellar, to sign it as witnesses. They saw her sign the instrument and then they signed as witnesses in her presence and in the presence of each other.

These facts are clearly shown not only by the testimony of the subscribing witnesses, but by the third party who was present, who was a grandson of testatrix. All the surrounding circumstances show clearly that the testatrix and both witnesses understood that she was making her will, that it was read to and approved by her, that she said it was her will and expressed a wish that these men sign it as her witnesses, which they did in her presence and in the presence of each other.

It is claimed by appellants that while the publication of the will was correct in so far as it was published to the witness Treptau, there was no publication as to the other witness Cappellar for he could not understand Polish, and that testatrix's statement that it was her will and requesting these gentlemen to sign as witnesses was made in Polish which Cappellar could not understand, and that the situation amounted to simply a publication to one witness.

I do not believe we should apply any such narrow rule to the facts as established in this case. Even though Cappellar could not understand Polish, he testified that after he was in the presence of testatrix and before the will was signed by her, he heard a conversation between testatrix and Mr. Treptau. Testatrix and both witnesses were present. He distinctly understood the word " testament " used between them when the will was present before them, and that word means the same thing in both languages. Cappellar not only heard that word used between testatrix and Treptau, but he saw testatrix when this conversation was going on, was in a position to observe her actions, and from the surrounding circumstances Cappellar understood that the lady was about to execute her will — her testament, and she also understood it.

Appellants rely on the case of *Hill* v. *Davis* (64 Okla. 250). Testatrix in that case was a Creek Indian and her declarations in reference to the publication of the will were interpreted to the witnesses by one who could understand the Creek language as well as English. The court held that

that was not a sufficient publication to the witnesses who could not understand the Creek language. But that case was decided under the Oklahoma statute, and while our statute, though differing in language, may mean the same thing as to the publication of the will to the attesting witnesses, in view of the facts and circumstances surrounding the execution of the will in question, we are not inclined to follow that decision.

In determining whether or not the will had been duly executed, the surrogate was not confined to the spoken word of the witnesses. He had a right to look to the surrounding circumstances and to the substance of the transaction, and from it all say whether or not the will had been duly executed. In *Matter of Hunt* (110 N. Y. 278) it is said: " The statute has surrounded the execution of wills with certain formalities, in order to prevent imposition, undue influence and fraud; but it is well settled by authority that a substantial compliance with the statute is always sufficient."

The witnesses in that case were unable to recall what took place when the will was executed, but the court said: " We think that it is a sufficient compliance with the statutory requirements if, in some way or mode, the testator indicates that the instrument the witnesses are requested to subscribe as such, is intended and understood by him to be his executed will. * * * If the paper was signed in the presence of the witnesses, that act was a sufficient compliance with the statute as to acknowledgment of the subscription."

In *Matter of Menge* (13 Misc. Rep. 553) one of the subscribing witnesses denied that the usual formalities were observed. The person who drew the will did all the talking between testatrix and the witnesses, and one of the witnesses testified that they signed the instrument before testatrix signed, and that at no time was the word " will " mentioned, and that there was nothing said or done to indicate that the instrument was declared by testatrix to be her will or that she requested them to sign any will as witnesses. Still the court said: " The communication made by the testatrix through Wright to the witnesses was a valid publication and a proper request. It was made known to them that the instrument was her will, and that they should sign the same

as the attesting witnesses. This constituted the observance of the requisite legal formalities."

In *Lane* v. *Lane* (95 N. Y. 494) the testator had not declared in terms to the witnesses that the instrument was his will and it was there held that the necessary publication might be discovered by circumstances as well as words, and inferred from the conduct and acts of the testator and that of the attesting witnesses in his presence. The court further said: " They [the witnesses] were present and together during both events of executing and attesting the will, and the conduct of the testator upon that occasion amounted to a declaration that the instrument was his will and testament."

In *Peck* v. *Cary* (27 N. Y. 9) the draftsman of the will in the presence of the testator requested the witnesses to sign and they signed it and it was held to have been done at the request of the testator. DENIO, Ch. J., said: " The object of the statute is that an officious signing by the witnesses, without any privity with the testator, should not be recognized as sufficient. Here, the agency of Morgan [the draftsman] being established and known, the understanding of the witnesses that they came forward and signed because the testator desired them to do so, and the understanding of the testator that they came and signed at his instance was perfect, and the privity which was the purpose of the statute was secured."

The object of the statutory publication is to prevent fraud. No fraud could possibly be spelled out of this transaction. Testatrix was competent to make her will, was not unduly influenced and the will was fair. Witness Treptau correctly interpreted to Mr. Cappellar what testatrix said with reference to the instrument before them being her will, and requesting the witnesses to sign it as such.

If testatrix understood what she was doing when she executed the will, and the witnesses understood that a will was being executed by her, it is sufficient. That she did understand what she was doing is clearly shown by the testimony of Treptau and her grandson, and that the witness Cappellar understood that testatrix knew that she was making a will is shown not only by the surrounding circumstances, but by the fact that she and Treptau were talking before the will was signed and when it was there before them, and the

word " testament," which means the same thing in both languages, was repeatedly used in their conversation.

From all the facts as established by the evidence and the surrounding circumstances, it seems to me a clear question of fact was presented for the learned surrogate, and his disposition of the question is supported by ample evidence.

I can see no good reason for withholding probate of this will, unless we are to follow a shadow and ignore the substance. The decree admitting the will to probate should be affirmed, with costs.

All concur, SEARS, J., in result only, except HUBBS, J., who dissents.

DAVIS, J. (concurring):

I concur for affirmance. The Decedent Estate Law, section 21, provides the manner of executing wills. It says in the part material here that the will shall be subscribed by the testator at the end in the presence of the attesting witnesses. In this case it was so subscribed. It says that the testator at the time of making such subscription shall declare the instrument so subscribed to be his last will and testament. The evidence is undisputed that the testatrix in this case did so declare. The statute does not require any particular form of declaration. It may be in words or signs or by conduct from which it may be conclusively inferred. (*Matter of Hunt*, 110 N. Y. 278; *Lane* v. *Lane*, 95 id. 494; *Gilbert* v. *Knox*, 52 id. 125; *Matter of Menge*, 13 Misc. Rep. 553.)

The statute does not require her to convey her declaration in any particular spoken language or other instrument of expressing thought or purpose. The method or means of communicating her declaration is unimportant. Substantial compliance with the statute is all that is necessary. (*Matter of Hunt, supra.*) It is clear that the testatrix expressed her declaration in the only language she could speak with the intent and purpose that it should be communicated to the two witnesses. It was communicated directly to one, and through the medium of interpretation in her presence to the other. If her spoken language was correctly interpreted, then the other witness understood her declaration and she knew that he so understood it.

The same is true of her request to the witnesses to sign the attestation clause. (*Peck* v. *Cary,* 27 N. Y. 9.) It is, as it always is when the due publication of a will is disputed, very largely a question of fact. There is little if any more danger of fraud here than in any case where one of the attesting witnesses is tempted to depart from the truth. (*Matter of Menge, supra.*) In this case the testimony of correct interpretation is very largely corroborated by the circumstances and by other evidence.

Decree affirmed, with costs.