In the Matter of the Estate of ARTHUR J. L. HOCK, Deceased.

Surrogate's Court, Kings County, October 1, 1936.

Abrams & Tannenbaum [Israel W. Tannenbaum and Maurice Abrams of counsel], for the proponent Lily Hock, widow of decedent.

Benjamin T. Hock, for the contestants Walter W. Hock, Harry L. F. Hock and Benjamin T. Hock, brothers and distributees of decedent.

WINGATE, S. Whereas in the ordinary litigation a judicial determination in favor of a party bearing the burden of proof would be unwarranted where the sole fact demonstrated by the witnesses was that they were unmitigated liars, there is a fortunate exception to this rule in certain probate contests. The exhibition in the case at bar renders this observation apposite.

The record demonstrates that at the time of the occurrences in question the decedent was forty-eight years of age, of sound mind, conceded testamentary capacity, very intelligent, a good business man and that he was commander of his post of Spanish War Veterans in 1933. He was chiefly engaged in the insurance business but had several other interests requiring the execution of many papers, which were frequently witnessed at his request by Meltzer and Lances, the witnesses to the propounded document.

The instrument in question bears date the 28th day of June, 1932. It is on a blank form, is drawn with great care, and bears the proved signature of the decedent not only at its end but in four places on the margins and in five additional places between the dispositive directions on the first page and the " in testimonium " clause on the third, where the decedent had, with meticulous care, ruled off all blank spaces, inserting therein in his own handwriting: " No writing herein Arthur J. L. Hock, June 28, 1932." It is apparent from an inspection of the document that, whereas it does not wholly comply with the legal definition of a holographic will, it is substantially such a one.

It is signed by the testator in the usual place below the " in testimonium " clause, and the signatures of both witnesses are

subscribed to the left of that of the testator. Beneath is an attestation clause, which reads: " Subscribed by Arthur J. L. Hock the Testator named in the foregoing Will, in the presence of each of us, and at the time of making such subscription, the above instrument was declared by the said Testator to be his last Will and Testament, and each of us, at the request of said Testator and in his presence and in the presence of each other, signed our names as witnesses thereto."

Beneath this again appear the signatures of the two witnesses, followed by a statement of their residences.

Lances, the second witness, who appeared to be the less flagrant prevaricator of the two, largely for the reason that his testimony was briefer, while admitting the authenticity of his signatures, denied all recollection of the occurrence, professing not to remember where he signed the document, whether the decedent's signature was there at the time of the subscription by him, whether he read the attestation clause, whether decedent said the paper was his will, or, indeed, that he himself had signed it.

Meltzer, the witness who first signed, apparently intended at the start to adopt a similar agnostic attitude, but having slipped into an admission that he had read the attestation clause at the time, found himself involved in difficulties from which he later sought to escape by such absurdities as statements to the effect that he construed various words thereof with such bizarre connotations as that " testator " meant " you shouldn't object;" that " Instrument " " is a thing that you play on;" and that " subscription " was " in the way of a donation," finally ending with the magnificent burst of asserted recollection that the signature of the testator was not on the instrument when he signed it.

The close of the hearing left with the court the settled conviction that both witnesses to the document had deliberately falsified in their testimony in furtherance of a conspiracy to defeat the probate of the will, and that their sworn statements respecting the events of execution were wholly unworthy of credence or serious consideration by any one with the possible exception of the district attorney. It follows that the court, as the trier of the facts, rejects their testimony in so far as it tends to negative the performance of the acts requisite to due execution of the will as enumerated in section 21 of the Decedent Estate Law.

In this situation the provisions of section 142 of the Surrogate's Court Act become pertinent and important. So far as presently relevant it is therein enacted that " If all of the subscribing witnesses to a written will be dead, or incompetent by reason of lunacy or otherwise, to testify, or unable to testify, or are absent from the

State and their testimony has been dispensed with as provided in this section, or if a subscribing witness has forgotten the occurrence, or testifies against the execution of the will, or was not present with the other witness at the execution of the will; the will may nevertheless be established, upon proof of the handwriting of the testator, and of the subscribing witnesses, and also of such other circumstances as would be sufficient to prove the will upon the trial of an action."

The judicial interpretations of this enactment which, in substance, has been in effect for approximately a century, have been so numerous, not to say innumerable, as to render independent ratiocination on the subject superfluous, and a statement of the pertinent legal principles in its application is largely reduced to what Judge CARDOZO has so aptly termed the " tonsorial and agglutinative " process.

A cogent reason for the enactment " permitting a will to be admitted contrary to the testimony of the subscribing witnesses," as stated in *Matter of Huber* (181 App. Div. 635, 640), is that " otherwise a premium would be put on just such practices as are hinted at here, namely, ' holding up ' an estate under threat to testify against due execution."

As is pointed out in *Matter of Ewen* (206 App. Div. 198, 201): " No Procrustean standard has been erected into which every testament's proof of due execution must fit or else be judged invalid."

To this may be added the testament in *Matter of Dybalski* (199 App. Div. 677, 680; affd., 234 N. Y. 510): " In determining whether or not the will had been duly executed, the surrogate was not confined to the spoken word of the witnesses. He had a right to look to the surrounding circumstances and to the substance of the transaction, and from it all say whether or not the will had been duly executed."

In other words, upon a failure of affirmative proof by the subscribing witnesses, or upon a rejection of their testimony by the court as unworthy of credence, as in the present case, the question of whether a particular disputed document was executed in accordance with the statutory requirements, becomes a pure question of fact, to be determined by the court on the circumstances of the case as they have been made to appear. (*Matter of Baldwin*, 216 App. Div. 111, 112; affd., 243 N. Y. 646.)

In approaching a consideration of the demonstrated requisites for an affirmative determination of the admissibility of a particular propounded document, it is to be borne in mind that " the object of the statutory publication is to prevent fraud," wherefore if " no fraud could possibly be spelled out " of the particular trans-

action, the required cogency of the demonstration may be somewhat relaxed. (*Matter of Dybalski*, 199 App. Div. 677, 681; affd., 234 N. Y. 510.)

The uncontroverted demonstration in the case at bar is that a man of conceded testamentary capacity and keen intellect, in the prime of life, who was engaged in active business which required continuous preparation and execution of documents, presented to two of his supposed friends of long standing, a substantially holographic instrument in proper testamentary form, signed it in the place required by statute, and in eight other places, procured their signatures both as witnesses and in purported certification of a full and complete attestation clause and preserved the document until the time of his death. On this demonstration, the remotest possibility of fraud upon the testator is unimaginable except that possibly inherent in the effort of the witnesses to invalidate the deliberate and carefully prepared expression of testamentary desire.

Were both of the witnesses to the present instrument dead instead of being merely recalcitrant, it is unquestionable that the court would be under obligation to admit the will to probate on the demonstration here made. (*Matter of Pepoon*, 91 N. Y. 255, 260; *Matter of Corcoran*, 145 App. Div. 129, 135.)

The contention for a contrary result in the present instance overlooks the recognized and authoritatively asserted cogency of the attestation clause. Since the right of the court to reject and disregard the testimony of a witness is not only inherent in the judicial office but is, in the present connection, expressly contemplated in the enactment (Surr. Ct. Act, § 142; *Wyman* v. *Wyman*, 118 App. Div. 109, 114; affd., 197 N. Y. 524; *Matter of Cottrell*, 95 id. 329, 333; *Matter of Sizer*, 129 App. Div. 7, 11; affd., 195 N. Y. 528), and the court has determined that the testimony adduced respecting the events of execution is totally unworthy of belief, it follows that the present record as to this phase of the matter is in precisely the same situation as if all evidence on this subject had been eliminated. The effect of the attestation clause as furnishing some evidence in support of the affirmative burden of demonstration of compliance with the statutory requisites thereupon becomes of moment. The quotation of a few typical excerpts from authoritative precedents on the subject will be of interest.

" While the statute requires certain formalities in the execution of a will, it does not require that such formalities must be proved by the testimony of the subscribing witnesses to the will in order that the will may be probated. * * * In the present case, therefore, the surrogate was permitted, the recollection of the subscribing witnesses failing, to resort to such other evidence as

is receivable in an action. He had before him a full attestation clause, and proof of the signatures of the testator and the subscribing witnesses. Was this alone evidence of the execution of the will with the formalities required by law? It was. There is no requirement of an attestation clause, but it is nevertheless recognized as evidence by the courts, and received, when necessary, and after proof of the signatures of the testator and the subscribing witnesses, as *prima facie* evidence of the facts certified by it." (*Matter of Sizer*, 129 App. Div. 7, 9 [2d Dept.]; affd., 195 N. Y. 528.)

" When a signed attestation clause is found on a will, and recites due execution, that fact is deemed a basis for a strong inference that there was an execution of the will according to the recitals.

" Such proof does not, strictly speaking, give rise to a presumption of law, but is, in itself, presumptive evidence of such facts as may be deduced or inferred from it naturally. Therefore, the effect of the existence of an attestation clause is simply to create very strong presumptive evidence of other facts. Even without an attestation clause, facts may be shown constituting such presumptive evidence, and, though the probative force of such facts may or may not be as strong as that of an attestation clause, the difference is in degree or weight, and not in kind." (*Matter of Abel*, 136 App. Div. 788, 792 [2d Dept.].)

" The evidence which such a certificate would afford would, in most cases, be sufficient to overcome the mere want of recollection of a living witness; and should the testimony of the latter amount to a positive denial, the relative weight of the conflicting proof would then depend upon the apparent integrity and intelligence of the witness and the circumstances surrounding the particular case." (*Orser* v. *Orser*, 24 N. Y. 51, 53.)

" The attestation clause being perfect it is not apparent how it can properly be claimed that the will was not sufficiently proved." (*Matter of Pepoon*, 91 N. Y. 255, 260.)

" This section (old Code, § 2620, now Surr. Ct. Act, § 142) received practical construction in *Brown* v. *Clark* (77 N. Y. 369); *Matter of Pepoon* (91 id. 255), and *Matter of Cottrell* (95 id. 329), and was held to mean, in accordance with prior decisions cited, that the proof of circumstances bearing upon the question of the authenticity of the will in connection with a regular attestation clause duly executed, were, if sufficient to satisfy the court of its genuineness, all that was required to sustain the probate of the will." (*Matter of Hesdra*, 119 N. Y. 615, 617.)

" The attestation clause is always some proof of the due execution of the will." (*Matter of Nelson*, 141 N. Y. 152, 156.)

"The attestation clause, which appears at the end and contains the fundamentals of a valid execution, was said to have been read by one witness, although the other witness does not recall that it was so read; but its appearance in the will is of itself some evidence of due execution when it is signed by the witnesses, and may overcome their lack of memory of details or even hostility to the proponent inducing testimony against the factum." (*Matter of Ewen,* 206 App. Div. 198, 201.)

The situation in the case at bar is, therefore, that the testimony respecting the formalities of execution by subscribing witnesses having been rejected as unworthy of belief, there remains the inference of due execution which arises from the presence of the attestation clause. Its status is, therefore, substantially identical with that in *Matter of Sizer* (129 App. Div. 7; affd., 195 N. Y. 528) as noted on page 11: "Consideration of the case is now come to the question of the weight and preponderance of the evidence at the close. The attestation clause, with proof of the signatures, having made out a *prima facie* case, was it overcome by opposing evidence? There was none, except the testimony of the third subscribing witness. * * * the surrogate may well have disbelieved him for it is hard to throw off the strong impression from his evidence and that of the other two subscribing witnesses that they could remember nothing, not even the signing of their names, that there was a conspiracy to destroy the will."

It follows, therefore, that upon the proof of the handwriting of the testator, and of the subscribing witnesses, and also the other circumstances noted, and upon the authorities hereinbefore cited, the court deems the instant will to be established to its satisfaction, and it will be admitted to probate.

Enter decree on notice in conformity herewith.