In the Matter of the Probate of the Will of GABRIEL PASCAL, Deceased. MARIANNE Z. SPEELMAN, Appellant; VALERIE PASCAL et al., Respondents.

Argued April 26, 1955; decided July 8, 1955.

*Francis X. Stephens, Jr.,* and *William B. McKeown* for appellant.  I. The Appellate Division erred in granting summary judgment dismissing appellant's petition for probate. (*Curry* v. *Mackenzie,* 239 N. Y. 267.)  II. The Appellate Division erred in refusing to allow appellant to show by evidence that the

language used by testator was an expression of motive and that the testator did not intend such language to create a condition precedent. (*Matter of Kipp,* 140 Misc. 195; *Matter of Niles,* 164 Misc. 328; *Lamb* v. *Lamb,* 131 N. Y. 227; *Matter of Gallien,* 247 N. Y. 195; *Close* v. *Farmers' Loan & Trust Co.,* 195 N. Y. 92; *Matter of Dialogue,* 159 Misc. 18.) III. The language of the holograph presents an ambiguity and extraneous evidence otherwise relevant is admissible on the issue of motive and intent. (*Matter of Corlies,* 150 Misc. 596, 242 App. Div. 703; *Matter of Hardie,* 176 Misc. 21; *Matter of Webb,* 122 Misc. 129; *Ex Parte Lindsay,* 2 Bradf. 204.) IV. The *Poonarian* case, upon which the Appellate Division relied in granting summary judgment, was itself a case where a full hearing was allowed. Appellant contends that the facts are distinguishable from the case at bar. (*Matter of Poonarian,* 234 N. Y. 329; *Matter of Lang,* 156 Misc. 448.) V. Decedent did not cancel his proposed trip. His efforts during the period from February 22, 1954, until the date of his death were in furtherance thereof. His ticket money was left on deposit with the airline and is now an asset of the estate. Appellant contends, therefore, that it is reasonable to assume that decedent died on his trip to India and that the condition, if any, as expressed in his will was fulfilled.

*Harry Merwin* for Valerie Pascal, respondent. There are no triable issues of fact. The holographic paper writing dated February 22, 1954, offered for probate, was in simple, clear and specific language to take effect as the last will and testament of Gabriel Pascal only " if " he died " on this my trip to india ", scheduled to commence the next day — February 23d. As that trip was never taken and decedent died in New York four and one-half months later, the condition was never met or fulfilled and the paper writing was not decedent's will at the time of his death. (*Matter of Poonarian,* 234 N. Y. 329; *Dwight* v. *Fancher,* 245 N. Y. 71.)

*Harry F. Mela* and *Lionel S. Popkin* for Eugenio Lehel, respondent. I. The instrument offered for probate was to take effect only on the condition that decedent died on " this my trip to india ". The condition never having occurred, the instrument never became effective as a will. (*Matter of Poonarian,* 234 N. Y. 329; *Matter of Bittner,* 104 Misc. 112.) II. The

record shows no issue of fact. III. None of the generalities and arguments in petitioner's opposing affidavits or unsupported statements in her brief show the existence of any evidence which would be admissible if there were a trial. (*Dwight* v. *Fancher*, 245 N. Y. 71; *Matter of Kearney*, 258 App. Div. 39; *Matter of Watson*, 262 N. Y. 284.)

FROESSEL, J. Petitioner, Marianne Speelman, offered for probate in the Surrogates' Court, New York County, as the last will of decedent, Gabriel Pascal, a handwritten document which reads as follows:

"To Zaya Kingman-Speelman
> 470 Park Avenue N. Y.

This is my will if I
should die on this
my trip to india
You are my sol heiress.
> Signed the 22 february 1954

Witnesses
[signatures]          [signature] Gabriel Pascal
Daisy Haang          in New-York City
Y. T. KAN
[oriental calligraphy] "

The petition for probate alleged that Gabriel Pascal died on July 6, 1954, less than four and one-half months after the date of said alleged will, leaving personal property worth over $20,000; that his only next of kin were a widow, and a brother residing in Venezuela; there were no children. Letters of administration *c.t.a.* to petitioner were prayed for.

Formal answers and objections to probate were filed by decedent's brother, Eugenio, and his widow, Valerie. The latter, it appears, obtained an interlocutory judgment of divorce against decedent in California on June 5, 1954, less than three weeks before his death. Valerie Pascal also applied to the same court for letters of administration in said estate. Both contestants assert, among other things, that the paper offered for proof by petitioner " is not a will and never became effective as such ".

Following the service of the answers, the widow moved for " a decree as summary relief " under rule 113 of the Rules of

Civil Practice, adjudging that the paper offered by petitioner "was subject to a condition precedent which never occurred" and therefore never became effective as the will of decedent; she also asked for a dismissal of the petition. In an accompanying affidavit, she states that Gabriel Pascal did not make the trip to India, "did not die on any such trip", but died in Roosevelt Hospital in New York City "after a prolonged illness". A death certificate annexed to the affidavit showed the decedent to have been a sixty-three-year-old film producer, of Hungarian birth and British citizenship, and death was there certified as due to "natural causes".

Petitioner's first affidavit in opposition, sworn to September 28, 1954, asserted only that said motion was "premature", and should await disposition of the pending probate proceeding. However, an amended affidavit, sworn to October 5, 1954, further stated that petitioner was prepared to establish, among other things, the following facts: that decedent's reference to the "trip" was included only because he was to fly to Bombay for an extended business trip on February 23d, the day following the execution of the document in question, and his thoughts were then very much occupied with the prospect of the trip; that decedent, though holding tickets for that flight, was advised by cable on February 22d or 23d that the person he was to visit in India would not be available until May, 1954; that the trip was never cancelled by decedent, but merely postponed; that the will offered by petitioner was never cancelled; that decedent was not living with Valerie Pascal when he executed the will nor for some time prior thereto, his said wife having obtained an interlocutory decree of divorce in California on June 15, 1954, based upon her sworn statement that she had been separated from decedent since January 1, 1953; and, finally, that she can demonstrate "that the conditional language in the said instrument was not in fact intended to be a condition precedent to its probate but that it was only included in his Will as a statement of inducement — the reasons why he was drawing that will at that time".

The Surrogate denied summary relief upon the ground that rule 113 of the Rules of Civil Practice, "is not applicable to this proceeding", and in any event "the question of law presented depends upon the resolution of triable issues of fact". The

Appellate Division reversed, granted summary judgment and dismissed the petition for probate.

We agree with the Appellate Division that a contestant in a surrogate's proceeding may invoke the provisions of rule 113 of the Rules of Civil Practice, wherever otherwise appropriate (Surrogate's Ct. Act, § 316; Rules Civ. Prac., rule 3; rule 113, subd. 4; *Lederer* v. *Wise Shoe Co.*, 276 N. Y. 459; *Riley* v. *Southern Transp. Co.*, 278 App. Div. 605; *Matter of Fishkind*, 271 App. Div. 1013; see, also, *People ex rel. Lewis* v. *Fowler*, 229 N. Y. 84), although occasion for granting such relief may be rare in a probate proceeding.

However, we do not agree that summary judgment should have been granted here. A will is properly admitted to probate when the Surrogate is " satisfied with the *genuineness* of the will, and the *validity of its execution* " (Surrogate's Ct. Act, § 144, subds. 1, 2; emphasis supplied). Formerly, it was provided that the surrogate be satisfied with the " genuineness and validity " of the *will*, a change not without significance (L. 1837, ch. 460, § 17; *Matter of Davis*, 182 N. Y. 468, 474–475). The provisions of section 144 "look only to the formal validity of the will's execution and it is immaterial * * * that the will, if probated, may be wholly inoperative by reason of the invalidity of its provisions or of subsequent events making it ineffective " (*Matter of Higgins*, 264 N. Y. 226, 229; *Matter of Davis, supra,* p. 475; *Matter of Crounse,* 168 Misc. 359, 361; see, also, *Ex Parte Lindsay,* 2 Bradf. 204, 208–209).

The succeeding section 145 of the Surrogate's Court Act provides for the *construction* of a will, and, so far as pertinent, reads as follows: " If a party expressly puts in issue in a proceeding for the probate of a will the *validity, construction* or *effect of any disposition of property,* contained in such will, the surrogate may determine the question, upon rendering a decree, after notice * * * or * * * may admit the will to probate and reserve the questions so raised for future consideration and decree." (Emphasis supplied.) The genuineness and validity of execution of the will are not questioned in this proceeding; the contestants here seek an adjudication that the holographic instrument offered for probate " is not a will and never became effective as such ".

We think the Surrogate was correct in stating that the question of the effect of the alleged condition upon the validity of the will, as to which we express no opinion, should be determined on the trial of the probate, or subsequently, in accordance with section 145 of the Surrogate's Court Act (see *Matter of Smith,* 254 N. Y. 283, 289–290). The alleged will is unartfully drawn, and a literal interpretation of its language is not necessarily determinative. (*Ex Parte Lindsay, supra,* p. 209.) In *Matter of Poonarian* (234 N. Y. 329) we took into consideration extrinsic facts developed at the probate hearing. Such hearing may shed light upon the intended effect and meaning of the instrument here offered for probate, and whether or not it was conditional.

The order of the Appellate Division should be reversed, and the order of the Surrogates' Court, dated November 17, 1954, reinstated, with costs to all parties appearing separately and filing separate briefs payable out of the estate. The appeal from the order of the Surrogates' Court, dated March 16, 1955, entered on the order of the Appellate Division, should be dismissed (Civ. Prac. Act, § 591, subd. 2).

CONWAY, Ch. J., DESMOND, DYE, FULD and BURKE, JJ., concur with FROESSEL, J.; VAN VOORHIS, J., concurs in the following memorandum: In *Matter of Poonarian* (234 N. Y. 329), the testator died sixteen years after completing the trip; this testator died before the trip was scheduled to begin. The hearing may develop that this instrument had not ceased to be a will at the time of testator's decease.

Order reversed, etc.