“ To Zaya Kingman-Speelman
470 Park Avenue, N. Y.
This is my will if I should die on this my trip to India You are my sol heiress.
Signed the 22 february 1954
Witnesses
[signatures] [signature] Gabriel Pascal
Daisy Haang
Y. T. Kan [oriental calligraphy] ”
Objections to the probate of this document were interposed by decedent’s widow and his brother. Their objections asserting fraud, undue influence and lack of testamentary capacity were withdrawn prior to the trial so that the only remaining issues as to the validity of the paper’s execution as a will are those asserting that the instrument was not duly published by decedent and that he did not request the witnesses to attest it.
Heretofore a motion was made by the widow for a summary judgment that the propounded paper was subject to a condition which never occurred and consequently .the instrument never became effective as the decedent’s will. It was urged in support of this motion that the propounded paper was intended to be operative only in the event of decedent’s death on a particular *339 trip to India and, inasmuch as he did not make a trip to India and died on July 6, 1954 in a New York City hospital, the instrument should not be admitted to probate. This court ruled that the motion for denial of probate would be held in abeyance for determination with other issues upon the trial (N. Y. L. J., Nov. 8, 1954, p. 8, col. 3). The Court of Appeals affirmed the order of this court and held that the effect of the alleged condition upon the validity of the propounded paper should be determined on the trial of the probate or other hearing at which the parties would have an opportunity to develop extrinsic facts in aid of a construction of the testator’s language (309 N. Y. 108). In accordance with this holding the parties have been permitted to introduce evidence in support of their respective contentions as to the validity and effect of the propounded paper.
Prior to the institution of this probate proceeding decedent’s widow filed a petition for denial of probate to the instrument now propounded and for the issuance of letters of administration to her. Decedent’s brother appeared in the administration proceeding and filed an answer objecting to the issuance of letters of administration to the widow. Subsequently the proponent of the purported will moved in the administration proceeding for an order dismissing both the application for letters of administration and the widow’s objections to probate upon the ground that the widow released and waived all her interest in the estate through a marriage settlement agreement with decedent. Disposition of that motion will be made at this time in conjunction with the other issues referred to above.
The question as to whether or not the propounded paper is a duly executed testamentary instrument is of first importance inasmuch as a negative answer would deprive the proponent of any further status in the estate and also would render construction of the paper unnecessary. The circumstances of the paper’s execution have been established. Stated in brief the pertinent facts are that on the evening of February 22, 1954 at the apartment of the proponent, decedent stated to one Daisy Haang, a person whose signature appears as a witness on the propounded paper, that he was about to write his will and he further said “I want you girls to be my witnesses that Mrs. Y. T. Kan then came into the room; that Kan’s knowledge of the English language was negligible; that the proponent said to Kan in the Chinese language that decedent was going to write a will; that decedent then wrote upon the paper, signed his name and handed the paper to Haang who wrote the word “ witnesses ” and signed her name; that Haang then handed *340 the paper to Kan and stated to Kan in Chinese that the paper was decedent’s will and that decedent wanted Kan to be one of the witnesses and that thereupon Kan signed her name below that of Haang\ The testimony was that the witness Kan was unable to interpret any statement in English that decedent and others made at the time. It is contended that the manner in which the instrument was executed and attested was not in compliance with section 21 of the Decedent Estate Law for the reasons that, because language differences made it impossible for decedent to converse with Kan, there was no declaration by decedent to Kan that the instrument was his will and Kan did not sign as a witness at the request of decedent.
The fundamental purpose of the statutory requirement of publication is to prevent fraud and it has been said that the reasons for requiring publication are two-fold; first, to assure that the testator is under no misapprehension as to the nature of the instrument he is executing and second, to impress upon the witnesses the importance of their act and their consequent duties to vouch for the validity of the instrument (Matter of Pulvermacher, 305 N. Y. 378, 383). Here the instrument is a holograph, the body of which opens with the words “ This is my will There can be no doubt of the testator’s awareness of the nature and purpose of this instrument in his own hand. He orally identified the instrument to one of the witnesses, he requested her to witness it and he asked her to procure the subscription of the other witness. The nature of the instrument was conveyed to the second witness and she then subscribed her name below that of the first witness in the presence of the testator. It is perfectly clear that the testator was fully aware of what was occurring and that these acts of subscription were not only with his acquiescence but were completely in accord with his wishes. It also has been established that both witnesses were cognizant of the nature of the instrument and the function they were performing in attesting it. It can be said in the words employed in Peck v. Cary (27 N. Y. 9, 26): “ the understanding of the witnesses that they came forward and signed because the testator desired them to do so, and the understanding of the testator that they came and signed at his instance, was perfect, and the privity which was the purpose of the statute was secured.”
In Matter of Dybalski (199 App. Div. 677, affd. 234 N. Y. 510) the courts considered facts comparable to those here presented inasmuch as the testatrix and one witness conversed during the execution ceremony in a language with which the second witness had no familiarity. In that ease the testatrix, who was unable *341 to speak the English language, had her will drafted and read to her by a person familiar with both English and the tongue of the testatrix. The draftsman signed as a witness and procured a second attesting witness who spoke English only. The instrument was read to the testatrix in her native tongue by the draftsman in the presence of the second witness, the testatrix signed the instrument in the presence of both witnesses and they signed in her presence and in the presence of each other. The decree of the Surrogate admitting the instrument to probate was affirmed by the Appellate Division with two opinions and by the Court of Appeals without opinion. The decision of the Appellate Division stated (p. 681): “ If testatrix understood what she was doing when she executed the will, and the witnesses understood that a will was being executed by her, it is sufficient. ’ ’ The court found from the surrounding circumstances that both the testatrix and the witness understood the nature and the purpose of their acts. The majority opinion in stating such conclusions referred to the fact that the second witness heard the word testament used in preliminary conversations between the testatrix and her draftsman. The concurring opinion made no reference to this bit of evidence and it is plain that the witness’ understanding of a single word out of context was not determinative of the question of the instrument’s validity but was considered as corroborative of the proof of due execution otherwise existing. The fact that the English speaking witness was able to interpret the word testament served as an element of proof that the testatrix, although executing a paper written in a language foreign to her, understood the nature of the paper and the significance of affixing her signature. In the case at bar proof of this kind is not needed for it cannot possibly be contended that the testator failed to appreciate the purpose of his holograph and consequently, unlike the cited case, there is no issue as to the understanding of a person now dead. Attack here is made upon the validity of the instrument because of the inability of the second witness to understand the English language. Proof of that witness’ comprehension of her act of attestation is not dependent upon a fragment of a conversation inasmuch as her understanding of her act was available through her testimony.
There is no requirement that a testator’s publication of his will be in a particular form and both a declaration of the character of the instrument and a request that the witnesses’ act may be communicated by signs and conduct as well as by words (Lane v. Lane, 95 N. Y. 494; Matter of Hunt, 110 N. Y. 278; Matter of Mullenhoff, 278 App. Div. 963; Matter of *342 Dybalski, 199 App. Div. 677, affd. 234 N. Y. 510, supra). Accordingly it is found that statements and events contemporaneous with the execution of the instrument established that the testator conveyed to both the witnesses the fact that the instrument was his will and his request that they sign the instrument as witnesses. It is held that the propounded paper was duly executed in accordance with section 21 of the Decedent Estate Law. The competency of the decedent to make a will and his freedom from restraint also having been established, the paper is entitled to probate under section 144 of the Surrogate’s Court Act.
Consonant with the opinion of the Court of Appeals (309 N. Y. 108,. 113-114, supra) the parties have been permitted to introduce in evidence extrinsic facts in aid of a construction of the will. The construction issue, referred to briefly hereinabove, arises because of the testator’s employment of the words “if I should die on this my trip to India ’ ’. The proponent contends that the quoted words are an expression of the testator’s motive for the making of his will in that a then impending trip to India made the testator conscious of the uncertainty of life and the consequent need for a will. The proponent further urges that, if the will is susceptible of the construction that it was to be effective only in the event of the testator’s death on his trip to India, the condition was fulfilled because the trip to India, although postponed, was never abandoned. The contestants assert that the explicit condition of the will was that it be operative only in the event that the testator died on the scheduled trip to India which he was to undertake on the day following the will’s execution.
The evidence established the facts hereinafter narrated. The testator and the proponent became acquainted in March, 1953 and thereafter their relationship was a close one. Prior to the date of the will the proponent had lent the testator $7,500, a substantial part of which she had procured by pledging jewelry, and at the date of the will the testator had not repaid the loan. The testator expressed great concern about this obligation and his inability to satisfy it. Some hours before the execution of his will the testator, with money borrowed from another source, had purchased a ticket for airplane passage from New York to Bombay, India, and had procured a reservation for a flight scheduled to leave New York at 5:00 p.m. on February 23, 1954. The testator for some time had entertained the idea of making motion pictures in India but his main purpose in making the flight on February 23 was to interview a particular individual in connection with a contemplated motion picture. The will was *343 executed in the proponent’s apartment at about 10 o’clock on the night of February 22,1954. On the morning of February 23 the testator was advised by cablegram that the individual whom he expected to interview in India would not be available until the end of May and thereupon the testator cancelled his passage. The fare was returned to the testator by check of the airline in April but he returned the check to the airline and obtained a credit. On May 19 a ticket for passage from New York to London, England was issued to the testator which was turned in on May 20 when there was issued to him a round-trip ticket from New York to Bombay via London. A reservation for a particular flight was not made. This ticket was not used and its cost was refunded to the estate after the testator’s death. In March the testator had repaid to the proponent a substantial part of her loan to him and she then redeemed the jewelry. The testator was in failing health from early May, 1954 and died on July 6 in a hospital in this city.
On February 23,1954 the testator’s wife verified a complaint in an action for divorce in the State of California. That complaint alleged that the parties had married in September, 1947 and had separated on January 1, 1953. The complaint further alleged that a property settlement agreement then was in the contemplation of the parties. A property settlement agreement was signed by the testator and his wife on March 10, 1954.
Can it be said that the testator’s will, considered in the light of the foregoing facts, was intended by him to be a disposition of his property regardless of the circumstances of his death? The Appellate Division has expressed the unanimous opinion that a reading of the testator’s will, unaided by any extrinsic fact, leads to the conclusion that it was intended to be a conditional instrument effective to pass his property only in the contingency that he met his death on a trip to India. Basing a construction of the instrument on its language alone no other conclusion is to be reached and when due weight is given to the extrinsic facts that conclusion seems only to be fortified. The paper was hastily drawn on the eve of an impending trip to India. It was drawn at a time when the testator was troubled lest his inability to repay a sum borrowed from the proponent would result in a forefeiture of her pledged jewelry. It is not mere conjecture to say that the disposition in the will was prompted by the proponent’s generosity to the testator and his consequent solicitude for her. To his mind the writing of the. will was an expeditious means of protecting her in the event of his sudden death and there is nothing in the circumstances *344 indicating that the testator was looking beyond the exigencies of the immediate situation. Knowledge of the extrinsic facts confirms the terse statement in the will that it was a disposition of the testator’s property in the contingency that he met death on his planned trip to India. That particular trip was abandoned and, in view of the conclusion here reached as to the limited purpose of the will, it is inconsequential that the testator may not have abandoned the business venture which occasioned the trip or that he retained the hope of visiting India when his health permitted him to do so and the necessary business arrangements had been concluded. The condition of the will of February 22 was that the testator meet his death on his contemplated trip to India on the following day. That condition did not occur and as a consequence the will does not provide a disposition of the testator’s property.
The motion to dismiss the objections of the testator’s widow was made by the proponent who under the foregoing construction of the will has no interest in the estate. The testator’s brother has not attacked the status of the widow and inasmuch as he would be the only person to benefit were the widow to be deprived of an intestate share no purpose is to be served by a consideration of the issues raised by the proponent’s motion. Accordingly the motion is dismissed.
The application of the widow for letters of administration has been opposed in the answer of the testator’s brother solely upon the ground that a corporate fiduciary would serve the interests of the estate in a more efficient and competent manner. This answer does not allege a statutory basis for denial of letters of administration to the surviving spouse who has a prior right to administration under sections 118 and 133 of the Surrogate’s Court Act.
Submit decree on notice (1) admitting the propounded paper to probate, (2) construing the will as ineffectual to dispose of any part of the testator’s property, (3) dismissing the proponent’s motion seeking a dismissal of the widow’s objections to probate, and (4) granting letters of administration with the will annexed to the widow.