Samuel Faile, S.
This proceeding for the probate of the purported will of decedent was originally uncontested. After several hearings, necessitated by the doubtful and conflicting testimony of the subscribing witnesses, objections were filed by one of the two sons of decedent. The objections filed relate to the alleged failure of the decedent to subscribe his signature or acknowledge the execution of the instrument in the presence of the subscribing witnesses and to the alleged lack of any publication of the instrument as a will.
The decedent died on November 22, 1954 and the propounded instrument is dated August 16, 1954. Following provisions for two named sisters, the instrument contains provision for legacies in favor of three designated charities. Provision is made for disposition of the residuary estate pro rata among the devisees and legatees named therein. The only provisions in favor of either son are limited to a bequest of $100 to one son and a bequest of certain household furniture, paintings and all other effects including an automobile contained in decedent’s residence, to the other son.
*398 The body of the will is contained on the first two pages and the third page contains a common form of attestation clause. The signatures of the subscribing witnesses appear at "the bottom of the second page opposite the subscription by decedent and also on the third page immediately following the attestation clause. On its face, therefore, the instrument appears to have been executed in compliance with section 21 of the Decedent Estate Law and the attestation clause contains recitals indicating execution in compliance with the provisions of said section.
The testimony of the subscribing witnesses as to whether or not the decedent subscribed the instrument in their presence or whether such signature was affixed to the instrument at any time before the subscribing witnesses affixed their signatures, was both confused and conflicting and at best demonstrated a lack of recollection as to the details of execution. The propounded instrument was executed shortly prior to the time decedent was to enter a hospital to undergo an operation. Following his death in Mt. Sinai Hospital on November 22, 1954, certain papers including the propounded instrument were returned to the post office in Mt. Vernon where decedent resided and subsequently came into the possession o'f the sons of decedent. A Dr. Gordon, who presumably was one of decedent’s physicians, telephoned one of the sons inquiring whether these papers had been found. On or about December 30, 1954, the sons of decedent consulted an attorney who, with one of the sons, interviewed the attesting witnesses at their home. At the interview the attesting witnesses who were husband and wife signed a statement in which they positively asserted that the signature of decedent was not affixed at the end of the will at the time they signed as witnesses and that when decedent took the paper with him following the execution, he had not signed the same.
Following conferences by proponent’s attorney with a representative of the trust company named as executor, a renunciation was filed by it and on January 27, 1955 a petition for probate and for the appointment of an administrator c. t. a. was filed by the son, Bernard Zipkin. On February 14, 1955, during a hearing designated to be held before a clerk of this court, Mrs. Bothenberg, one of the subscribing witnesses, testified that she did not see the decedent sign his name but could not recall whether his signature was on the will at that time. On the same occasion her husband, the other subscribing witness, testified that he was unable to observe whether or not the *399 signature was on the will at the time o'f execution. Thereafter the Surrogate caused the subscribing witnesses to appear for further proof on March 8,1955, at which time, despite his earlier statement that at the time of execution the instrument was not signed by decedent, the witness, Mr. Rothenberg, testified he did not know whether the signature of decedent was affixed to the will when he signed as witness; that he had no recollection in the matter, stating that the testator had held his hand over the space reserved for the signature of decedent, whether intentionally to conceal the signature or merely to facilitate the signing by each of the witnesses. On the same date Mrs. Rothenberg, despite her earlier testimony, testified that decedent’s signature could have been on the will when she signed; that she was not prepared to say that it was not, but that she had not seen it. On the same date the attorney for proponent testified that when he commenced his investigation there was no indication of dissatisfaction with the will on the part of either son, and that in later conversation with them, both sons had indicated a desire to carry out the wishes of their father. The attorney further testified on March 8, 1955, “ they are still satisfied ”, referring to the wishes of the sons. The hearing was thereupon adjourned and the Attorney-General for three charities named as legatees was given an opportunity to appear and produce witnesses if he deemed it advisable.
At a later hearing on October 31, 1955, there were appearances in behalf of the Attorney-General and of the three charitable institutions named as legatees, and for the first time Herbert Zipkin appeared by separate counsel who requested leave to file objections to probate. The application was granted and the proceeding was adjourned to permit service of the necessary notice of objections upon named legatees. On this occasion the attorney for proponent requested leave to withdraw as proponent’s attorney and suggested that one of the other legatees be substituted as proponent. By decision dated November 9, 1955 (N. Y. L. J., Nov. 15, 1955, p. 15, col. 3) the court denied permission for such withdrawal and the hearing was adjourned to January 25, 1956. On the adjourned date counsel for the respective parties stipulated that all prior testimony might be considered by the court in passing on the objections filed subject to cross-examination and any further testimony. On the adjourned date, Bernard Zipkin established for the first time the genuineness of the signature of decedent subscribed at the end of the will.
On this occasion the cross-examination of one of the subscribing witnesses, Mr. Rothenberg, developed that his recollection *400 was very hazy as to the details of execution of the instrument and Mrs. Rothenberg testified as follows:
“ Q. Well now, is your recollection of the manner and details of the execution of this will hazy?
“ A. Very.”
In answer to the question by the attorney for contestant as to whether her recollection that she did not see the signature of testator on the will was definite, she replied:
“ A. As far back as I can remember and from what I have stated before, I do not recall whether I did or didn’t see it. That is all I can tell you.
“ Q. Do you recall Mr. Zipkin ever telling you at that time that his signature was on the will?
“ A. I do not recollect.”
There is no claim o'f lack of testamentary capacity or any suggestion of fraud or undue influence. The only question presented is whether an instrument apparently valid on its face bearing the signature of the decedent and the signatures of the subscribing witnesses opposite that of the decedent, as well as immediately following the attestation clause, was signed by the decedent at or prior to the time the subscribing witnesses affixed their signatures or whether decedent’s signature was affixed at some later time following execution. The evidence is clear that decedent declared the instrument to be his will in the presence of both subscribing witnesses who thereupon affixed their signatures.
The testimony of such witnesses that they did not see the testator sign the instrument and did not see his signature on the will and that he did not acknowledge his signature, is unconvincing in the light of their repeated contradictory statements regarding these matters and their obvious and admitted hazy recollection of the details surrounding the execution of the will. That the witnesses signed a document at the bottom of the second page immediately opposite the space reserved for decedent’s signature and witnessed the turning of this page and then signed beneath the attestation clause on the third page without seeing the testator’s signature is highly improbable. The evidence tends to support the lack of recollection o’f seeing the signature rather than indicating the absence of decedent’s signature.
In similar circumstances the courts have held that there is a presumption of compliance with the necessary formalities of execution. (Matter of Price, 254 App. Div. 477, affd. 279 N. Y. 700; Matter of Dodds, 268 App. Div. 811, affd. 294 N. Y. 706.) It has long been established that wills may be probated on a *401 full attestation clause even though the subscribing witnesses testify to the contrary or lack any recollection of the details of execution. (See Orser v. Orser, 24 N. Y. 51; Trustees of Auburn Seminary v. Calhoun, 25 N. Y. 422; Matter of Cottrell, 95 N. Y. 329; Matter of Hock, 160 Misc. 621.) In Matter of O’Brien (N. Y. L. J., Dec. 13, 1955, p. 7, col. 5), Surrogate Collins in citing Orser v. Orser (supra) with approval, admitted to probate a will where one witness was deceased and the other lacked any recollection as to the circumstances surrounding execution. In the absence of fraud or undue influence, the courts are inclined to consider the circumstances of the transaction in order to ascertain whether there was opportunity for imposition. (Matter of Hunt, 110 N. Y. 278.)
Objectant attaches significance to the fact that the back annexed to the will was not permanently affixed thereto and bore a date in 1947, although the purported will is dated in 1954, and refers to the indorsement on the back containing the name of an attorney who was not located, as supporting the conclusion that the will was probably prepared and typed by the decedent. If it be assumed that decedent prepared and typed the propounded instrument and drafted the attestation clause, there would necessarily have been then “ brought before his mind each one of the conditions imposed by the statute as necessary to its valid execution.” (Matter of Cottrell, supra, p. 339, Ruger, Ch. J.)
The court concludes that the recollections of the subscribing witnesses are faulty as to the details of execution. The instrument was executed with some haste as the witnesses were about to leave the premises and the lack of any prior experience as subscribing witnesses rendered them unaware of the necessity of noting or recalling the essential formalities o'f execution. An inflexible rule that the subscribing witnesses must remember not only what they saw and heard and require them to recognize and identify the signature of decedent, might defeat the object of the statute and lead to injustice. (Matter of Laudy, 161 N. Y. 429, 433-434.)
Upon all the evidence the court determines that the propounded instrument was executed in compliance with the provisions of section 21 of the Decedent Estate Law. The competency of decedent and his freedom from restraint having been duly established, the objections to probate are dismissed and the propounded instrument will be admitted to probate as the last will and testament of decedent.
Settle decree.