Samuel H. Hostadter, J.
The plaintiff in this action claims the right to participate in the profits of the popular musical ‘ ‘ My Fair Lady ’ under a deed of gift executed by the well-known producer Gabriel Pascal, now deceased. His estate, through his widow, as administratrix, resists the claim. The defendant having moved for summary judgment dismissing the complaint, the plaintiff has crossed-moved for summary judgment in her favor. Each concedes that only questions of law are involved and each insists that the applicable legal principles entitle her to judgment.
The plaintiff and Pascal became acquainted in March, 1953, and their relationship thereafter became a close one. At the time he met the plaintiff, Pascal had separated from his wife (the present administratrix), and the latter, in February, 1954, brought suit for divorce against him in California. A property settlement between them was reached in March, 1954, and on June 15,1954, the divorce was granted by a decree which had not yet become final on July 6,1954, the date of Pascal’s death.
On February 22, 1954, Pascal made a will “ if I should die on this my trip to India” in which he left everything to the plaintiff. He never took the contemplated trip to India and after protracted litigation this will, though ultimately admitted to probate, was held ineffectual to dispose of any part of the testator’s property (Matter of Pascal, 309 N. Y. 108; 2 Misc 2d 337, affd. 4 A D 2d 941, motion for leave to appeal denied 4 A D 2d 1021, 4 N Y 2d 674). As a result the plaintiff, of course, takes nothing under the will.
The deed of gift on which the plaintiff founds her right of recovery in this action was signed by Pascal on February 23, 1954, and reads:
11 This is to confirm to you our understanding that I give you from my shares of profits of the Pygmalion Musical stage version five per cent (5%) in England, and two per cent (2%) of my shares of profits in the United States. From the film version, five per cent (5%) from my profit shares all over the world.
‘ ‘ As soon as the contracts are signed, I will send a copy of this letter to my lawyer, Edwin Davies, in London, and he will confirm to you this arrangement in a legal form.
“ This participation in my shares of profits is a present to you, in recognition for your loyal work for me as my Executive Secretary.”
The produced version of “Pygmalion” is, of course, “My Fair Lady ”. It has had two productions in the United States and one in England, with results of which the court may well take judicial notice, both in its artistic achievement and box- *769 office appeal. The profits of those productions accruing to the Pascal estate have been substantial. The plaintiff seeks the sum of approximately $2,600 annually as her share under the quoted document. The defendant rejects the demand, asserting that the plaintiff has no enforcible legal gift by definition and that if the writing does constitute a complete gift, it must nevertheless be denied efficacy because received in consideration of a meretricious relationship. There is no dispute that the writing was on its date delivered with intent to make a gift or that it was accepted.
The gift is tantamount to an assignment and the delivery by written deed of gift is sufficient (Matter of Cohn, 187 App. Div. 392). The source of profit to be realized, and which was assigned, was then in existence. It is immaterial whether the literary property itself belonged to the decedent or to a corporation, of which he held all but a few shares, for the gift is a percentage of his share of the profit. Through his corporation, an agreement, dated April 30,1952, was obtained from the Public Trustee in London, granting the exclusive right to prepare and produce what has universally delighted the theatre world, 1 ‘ My Pair Lady ’ ’. The contract of April 30, 1952, was, in turn, duly assigned to the decedent. The expectation of exploitation and profit was natural and reasonable. Its fruition occurred during the administration of the estate while the Chase Manhattan Bank was acting as temporary administrator. It had been granted the power to make a contract, dated May 23, 1955, with Lerner, Lowe and Levin, while decedent’s rights under his contract were in force and not to expire before April 8, 1956. Actually, the negotiation which resulted in further contract and contract operations producing the profit accruing after Pascal’s death was an extension of his original property. There was no cancellation of his contract in the sense of its destruction without vestige. In the place of the original contract held by him and as one of its fruits the estate has received through the resulting contracts the interest it now has in the producer’s contract. The seed which Pascal had painstakingly planted has flowered, and the defendant may not be heard to deny the plaintiff its bloom. Indeed, it was by the prospective negotiation for the exploitation of the basic rights in the literary property that the temporary administrator persuaded the Surrogate that the rights be preserved to the estate and that the temporary administrator be empowered to take the necessary steps towards that end. True, the plaintiff’s suggestion that the basic contract be not cancelled, but assigned to the proposed producers, was not, in form, adopted. Instead, its cancellation was directed, *770 to be followed by new contracts. The end result was, however, the same. The contention that the plaintiff thereby permitted the temporary administrator to deal with the asset free of any participating ownership in her is a complete distortion and utterly fallacious.
We come, finally, to the claim of unlawful consideration. The defendant endeavors to impugn the truth of the statement in the deed of the motives which prompted the gift. In fact, the document does not refer to consideration. Moreover, what, if anything, was given for the gift, is immaterial. This is not a contract which plaintiff seeks to enforce. It was a gift, complete on the delivery of the instrument of February 23, 1954, and nothing further remained to be done to give it vitality. It was nonetheless complete though the profits were earned later.
The long arm of coincidence has reached often into the lives of these parties and played tricks with fate, cruelly or kindly, depending on the view. In the matter before the court, however, law and justice coincide, but by no mere act of coincidence, and they dictate that the plaintiff prevail.
The counterclaims are not supported by proof.
Accordingly, the defendant’s motion for summary judgment is denied and the plaintiff’s motion for summary judgment is granted.
Settle order.